### ATLANTIC PHOSPHATE COMPANY v. SULLIVAN.

1. A REPLY TO A COUNTER-CLAIM in these words: "The plaintiff replying to the counter-claim set up in the answer of defendant herein, denies the same," is sufficient to put in issue all the allegations upon which the counter-claim rested.

2. WRITTEN CONTRACT—TWO PAPERS.—A sub-agent of the plaintiff made to defendant a written offer to sell for plaintiff's account 100 tons of fertilizers at a price stated, "with the privilege of 200 tons more at same prices if in stock unsold, when wanted," but it was expressly stipulated that this offer "was subject to the approval of the general agents." Defendant accepted the offer, and it was marked approved by the general agents and returned to defendant, accompanied with a letter from the sub-agent, written by direction of the general agents, stating that plaintiff could not promise to furnish more than the 100 tons, on account of recent large sales. After this defendant received and used the 100 tons, but failed to get any more, and had to purchase elsewhere at higher prices, to meet engagements made by him. *Held*, that plaintiff was not bound by contract to furnish more than 100 tons, and therefore not liable to defendant for failing to ship the additional 200 tons when wanted.

3. IBID.—IBID.—The letter of the sub-agent above referred to accompanying the approval of the general agents, was properly received in evidence—not for the purpose of contradicting the contract, but as a part thereof.

4. CONTRACTS—REQUEST TO CHARGE.—Under request to charge that plaintiff was liable for damages sustained by defendant by reason of plaintiff's failure to ship the 200 additional tons, if the same were on hand or could have been shipped, the trial judge did not err in adding, "If the evidence satisfies you that the plaintiff had 200 tons on hand and unsold, and refused to ship it, if it was bound under the contract to ship." Nor would a refusal of the request have been error, as plaintiff, by buying, "*could* have shipped," while the provision in the offer was, "if in stock unsold."

5. INDEFINITE EXCEPTION—CHARGE ON FACTS.—An exception alleging "error in charging the jury in respect to matters of fact," is too general to require consideration. The charge in this case shows no such error.

Before IZLAR, J., Greenville, August, 1890.

Action by Atlantic Phosphate Company against John D. Sullivan. The charge to the jury was as follows:

This action was brought by the plaintiff to recover the value of one hundred tons of fertilizers alleged to have been sold and delivered by the plaintiff to Mr. John D. Sullivan, the defendant, and for which, it is alleged, he has not paid. The defendant admits the corporation of the plaintiff. But while he admits that he received the one hundred tons of fertilizers, he sets it up, by way of defence, that he was induced by the plaintiff to get two hundred additional tons, and that the plaintiff having failed to deliver the two hundred additional tons, that he had to get guano elsewhere, and that he was damaged by this breach of the contract entered into between the defendant and the plaintiff for the two hundred additional tons, and he sets up a counter-claim for damages for that breach of contract. Now, a counter-claim is in the nature of a cross action. The defendant sets up these facts as a counter-claim, by which he says he was damaged by that failure to deliver to the extent of $2,000.

Now, I charge you in reference to this contract: the construction of this contract is a matter of law for the court, and I charge you that this offer to sell by the travelling agent, Mr. McIver, to Mr. Sullivan, on the 12th of January, 1888, did not become a complete contract until it was submitted to Pelzer, Rodgers & Co., in Charleston, for their approval. That up to that time no party was bound by the contract, and when it was submitted to Pelzer, Rodgers & Co., in Charleston, if they had approved of that contract, then it would have become a binding contract upon all of the parties here, and Pelzer, Rodgers & Co. would have been bound to have complied with the terms of that contract; and also the defendant would have been bound by the terms of it. Now, you have heard the testimony of Mr. McIver, that these duplicates were to be sent to Charleston to be submitted to Pel-

zer, Rodgers & Co., and that it was returned to Mr. Sullivan, to-
gether with this letter. If you believe from the testimony that
this contract was signed by Pelzer, Rodgers & Co., and that this
letter was written by their direction, and that the two were sent
together to Mr. John D. Sullivan, then this original offer for
sale and the letter together, I charge you, made the contract be-
tween the parties.

If this paper had stood alone, and no letter had been sent, I
charge you that this would have been the contract; and before
Mr. Sullivan could have recovered, he would have to show that
the Atlantic Phosphate Company had in stock and unsold at the
time he ordered the same, the two hundred tons additional. If
this paper had stood by itself, it would have shown that, for it
says: with the privilege of two hundred tons, if, when ordered,
the plaintiff had the same in stock and unsold. Defendant would
have had to show that they had that much in stock and unsold
when he ordered. I call your attention to that in case you should
come to the conclusion that these two papers did not go together
and did not make up the contract. For, taking that as the con-
tract alone, then I say that the testimony would have to show
that Mr. Sullivan had ordered his two hundred tons, and that
they had in stock at that time unsold two hundred tons.

The letter which was written by Mr. Freeman, you will recol-
lect, was written on the 24th of February, which was eight days
after this offer was made, and I do not recollect the testimony
whether in that eight days Mr. Sullivan had demanded these two
hundred tons or not. Now, I say that the travelling agent, Mr.
McIver, could not act outside of the authority which was given
him, and if he did, it would not bind Pelzer, Rodgers & Co.,
because he could not make a contract binding Pelzer, Rodgers &
Co. until the offer was sent in for approval. If you come to the
conclusion that this paper was sent alone, and that Mr. Sullivan
demanded the two hundred additional tons, and that they had
two hundred tons in stock, and it was unsold at the time—I say
if he was standing on this paper alone—why, Pelzer, Rodgers &
Co. would be liable for such damages as you think he has sus-
tained by reason of plaintiff's failure to keep the contract. But,
if you come to the conclusion that this letter was written by direc-

tion of Pelzer, Rodgers & Co., and was sent with this contract to defendant, and that this paper was signed by Pelzer, Rodgers & Co., then it was not any more than a contract for the sale of one hundred tons of guano, and you will ascertain from the testimony whether it has been paid for or not.

If you come to the conclusion that the contract was only for one hundred tons, and that one hundred tons was not paid for, it would be your duty to find your verdict for the plaintiff for $1,-300, or whatever the balance is, with interest from May 1st, 1889. On the other hand, if you come to the conclusion that they approved for the whole amount, and they had it on hand and unsold when ordered by defendant, and did not ship it, why then you will ascertain what damages, if any, Mr. Sullivan has suffered, and your verdict will then be for the difference between the damages Mr. Sullivan claims and what he owes.

I have been requested by the defendant to charge you : "*First.* That the plaintiff is bound by the contract as signed and approved by Pelzer, Rodgers & Co., and its terms are not affected by the letter written by Mr. G. W. McIver and addressed to the defendant." I refuse to charge you that.

"*Second.* That if the jury believe from the evidence that the plaintiff had on hand or could have shipped to the defendant, when demanded, the two hundred tons of fertilizer referred to in the contract, or any part thereof, and failed so to ship the same, then the plaintiff is responsible for any damage sustained by the defendant by reason of such failure." I charge you that that is a good proposition if the evidence satisfies you that the plaintiff had two hundred tons on hand and unsold, and refused to ship it, if they were bound under the contract to ship it. Take the record.

The jury found for the plaintiff fifteen hundred and seventy-seven and 89–100 dollars, and judgment having been entered thereon, notice of intention to appeal was duly served, and defendant appealed to this court on the following exceptions :

I. That it is submitted that his honor, the Circuit Judge, erred in holding that the denial contained in the reply of the plaintiff was sufficient to put the defendant upon proof of his counter-

claim.    II. That his honor erred in holding that the letter of G. W. McIver to the defendant constituted part of the contract between the plaintiff and defendant, and so altered the terms of the contract signed by plaintiff as to relieve them of the necessity of shipping the two hundred tons if called for.    III. That his honor erred in refusing to charge the jury as requested by defendant in their first request.    IV. That his honor erred in refusing to charge the jury as requested by the defendant in their second request.    V. That his honor erred in allowing the letter of G. W. McIver to be put in evidence for the purpose of contradicting the written contract of the plaintiff.    VI. That his honor erred in charging the jury in respect to matters of fact.

*Messrs. Perry & Heyward,* for appellant.

I. The denial contained in the reply is not sufficient.    *Code,* § 174 ; *Pom. Rem.,* §§ 578, 637 ; *2 Wait Prac.,* 441 ; *2 Estee Plead.,* § 3175 ; 15 S. C., 189 ; 6 *Id.,* 113.    II. The letter of G. W. McIver was no part of the contract and was improperly admitted in evidence to change the terms of the contract as approved by the general agents of the plaintiff.  *Greenl. Evid.,* §§ 281, 288 ; 10 Peters, 482 ; 24 S. C., 130 ; 29 *Id.,* 557 ; 1 Brev., 306 ; *Add. Cont.,* § 220 ; 2 *Pars. Cont.,* 494, *et seq.,* 500.    III. The presiding judge charged the jury upon matters of fact.

*Messrs. Wells & Orr,* contra.

August 11, 1891.    The opinion of the court was delivered by

Mr. Justice McIver.    The action in this case was to recover from defendant the amount claimed to be due plaintiff for one hundred tons of commercial fertilizers alleged to have been sold and delivered by plaintiff to defendant.    The complaint, amongst other things, contains an allegation that this sale was made under a written agreement, a copy of which is set out in the "Case." This agreement was executed by G. Walter McIver, the travelling agent of the plaintiff, and by the defendant, on the 12th of January, 1888, the terms of which will be hereinafter more specifically stated.

Defendant answered, admitting the execution of an agreement

20—34

for the sale by plaintiff to defendant of certain fertilizers at the stipulated prices therein stated, but denying all the other allegations of the complaint, except as afterwards admitted in the answer; "that by the terms of the agreement made between the plaintiff and defendant, the plaintiff bound itself to ship to defendant one hundred tons of fertilizers, as specified in said agreement, and two hundred tons more at the same prices, if in stock unsold, when ordered by defendant, or when notified by defendant that he, defendant, would want it;" that defendant, relying upon this stipulation for the delivery of the additional 200 tons when wanted, with which the agent of plaintiff represented that plaintiff would be able to comply, entered into engagements with others to furnish them with said fertilizers, and for this purpose ordered from plaintiff said additional two hundred tons, but the plaintiff failed and refused to ship the same to defendant, although the plaintiff then had the same in stock unsold ; that in the meantime the price of fertilizers had advanced rapidly, and defendant, in order to comply with his engagements to others, was compelled to buy fertilizers elsewhere at an advanced price, which occasioned him much damage and expense, which he sets up as a counter-claim to plaintiff's alleged cause of action.

The plaintiff filed a reply in these words: "The plaintiff, replying to the counter-claim set up in the answer of the defendant herein, denies the same." At the trial, defendant's counsel moved for judgment, upon the ground that the reply contained no sufficient denial of the counter-claim. This motion was refused and defendant excepted, whereupon the plaintiff proceeded to offer testimony in support of its claim.

The written agreement above referred to was offered in evidence, and contains, among other things, an offer by the travelling agent, McIver, to sell to defendant the fertilizers sued for, "subject to the approval of the general agents at Charleston, * * * with privilege of two hundred tons more at same prices, if in stock unsold, when wanted, or when you notify us you will want it," and this paper, bearing date 12th January, 1888, is signed by McIver, as travelling agent, with these words appended, "Accepted in duplicate, John D. Sullivan," with these words following: "Approved January 16th, 1888. Pelzer, Rodgers & Co.,

general agents." This agreement was signed by McIver and Sullivan on the day of its date—12th January, 1888—in duplicate, and both copies were on the same day forwarded to Pelzer, Rodgers & Co., who were shown to be the general agents of plaintiff in Charleston. On the 16th of January, 1888, McIver, who had in the meantime returned to Charleston, after conference with the general agents, wrote a letter to defendant by their directions, in which among other things, he says: "I enclose your contract of one hundred tons duly approved. The sales made by the company has been so large in the past ten days (something like twelve thousand tons) that they cannot now promise to supply more than the one hundred tons for which your contract calls. Later on we may be able to let you have some ammoniated goods, but we have to go into the market and buy more materials and the prices will be higher. At present our contracts foot up as much as we can manufacture to 1st April." To this letter, enclosing duplicate of the agreement, which was mailed on the 16th of January, 1888, and would have been received by defendant in due course of mail on the next day, and which was in fact received by him, but when precisely does not appear, though it was about the time it was due in Greenville, there does not seem to have been any reply. There is testimony, however, tending to show that the one hundred tons were shipped to defendant and received and used by him.

The defendant offered testimony tending to show that one of the inducements for him to enter into this agreement was the assurance of the travelling agent that plaintiff would be able to supply the additional two hundred tons, which he ordered. and failing to get had to go into the market and supply himself at higher prices, and otherwise incurred expense in travelling and hotel bills, &c.; but the only evidence adduced by defendant for the purpose of showing that plaintiff had "in stock unsold" at the time defendant ordered the additional 200 tons, which time the testimony does not fix, is that of his witness, Freeman, who says that in reply to a letter from him to Pelzer, Rodgers & Co., written at the instance of defendant, asking them "to quote Acid Phosphates," they answered under date of 24th January, 1888, offering to sell the witness "fifty tons pure Acid Phosphate in.

Dissolved Bone bags, at $11 per ton, spot cash, f. o. b. cars here, in car-load lots," which price was somewhat higher than that stipulated for in the agreement with defendant.

The case having been submitted to the jury, under the charge of the Circuit Judge, a verdict was rendered in favor of the plaintiff for the whole amount claimed, and judgment having been entered thereon, defendant appeals upon the several grounds set out in the record.

The first ground, alleging error in the ruling that there was a sufficient denial of the counter-claim in plaintiff's reply, cannot be sustained. It seems to us that the form of the denial adopted in the reply was quite sufficient to put in issue all the allegations upon which the counter-claim rested.

The second and third grounds impute error to the Circuit Judge in holding that the letter of McIver to defendant constituted any part of the contract, or could have any effect upon it. The charge of the judge seems to be set out in full in the "Case," and should be incorporated in the report of this case; and in our judgment it fully and clearly sets forth the law applicable to this case. In the first place, the judge did not instruct the jury that the letter constituted a part of the contract, but his instruction practically was this, that the paper, called the agreement, when executed in Greenville by the travelling agent of the plaintiff and the defendant, amounted to nothing more than an offer by the former to sell the goods in question to the defendant, provided the general agents in Charleston approved; and that until such approval, there was no contract binding on the plaintiff at all. That this was correct is manifest from the express terms of the paper—"I hereby offer to sell you for account of the Atlantic Phosphate Company, of Charleston, S. C., the following fertilizers * * * , subject to the approval of the general agents at Charleston." The paper, then, not being a contract until it was so approved, the jury were instructed: "If you believe from the testimony that this contract was signed by Pelzer, Rodgers & Co., and that this letter was written by their direction, and that the two were sent together to Mr. John D. Sullivan, then this original offer for sale and the letter together, I charge you, made the contract between the par-

ties." This is very different from saying, in broad and unquali-
fied terms, that the letter constituted a part of the contract.

The paper, as originally signed, being nothing more than a
proposal by a sub-agent to sell on certain terms, subject to the
approval of the general agents, could only become a contract by
such approval, which might be absolute or qualified, and such
qualification might be indicated either by alterations in the paper
as originally written, or by any accompanying writing—by a let-
ter, as in this case, written by or under the direction of the general
agents, and transmitted along with the paper containing the offer to
sell, to the defendant, who was thereby fully informed of what the
parties authorized to contract were willing to do ; and if he was
unwilling to accept the qualifications contained in the accompany-
ing letter, all he had to do was to withdraw from the contract as
thus qualified ; for, having accepted the offer upon the terms origi-
nally proposed, he would have had a perfect right to withdraw when
he was notified of an alteration in the terms ; but not having
done so, he cannot now insist upon terms which he was informed
by the agent of the persons competent to contract they could not
agree to.    Having received and used the one hundred tons of
fertilizers, he cannot escape from his obligation to pay for the
same according to the terms of the contract, by insisting upon
other terms originally embraced in the offer to sell, but practi-
cally erased therefrom by the letter accompanying the contract
when it was returned to him.    It can scarcely be necessary to
cite authority to show that the terms of a contract may be con-
tained in several instruments of writing, which, as is said in 2
Pars. on Con., 503, "if made at the same time between the
same parties, and in relation to the same subject, will be held to
constitute but one contract, and the court will read them in such
order of time and priority as will carry into effect the intention
of the parties as the same may be gathered from all the instru-
ments taken together."    The same doctrine is frequently exem-
plified in cases arising under the statute of frauds, as may be
seen by reference to the case of *Louisville Asphalt Varnish
Company* v. *Lorick & Lowrance*, 29 S. C., 533, and the cases
therein cited.

The fourth ground of appeal imputes error on the part of the

Circuit Judge in refusing to charge the jury: "That if the jury believe from the evidence that the plaintiff had on hand, or could have shipped to the defendant, when demanded, the two hundred tons of fertilizers referred to in the contract, or any part thereof, and failed so to ship the same, then the plaintiff is responsible for any damages sustained by the defendant by reason of such failure." The "Case" does not show that such request was refused. On the contrary, the language used by the judge was this: "I charge you that that is a good proposition, if the evidence satisfies you that the plaintiff had two hundred tons on hand and unsold, and refused to ship it; if they were bound under the contract to ship it"—plainly meaning that if they should come to the conclusion that the letter had not been written under the direction of Pelzer, Rodgers & Co., or had not been transmitted to defendant along with the duplicate copy of the contract when returned to him, as the previous part of the charge most clearly shows. But even if the request had been refused outright, there would have been no error; for by incorporating in the request the words, "or *could have shipped* to the defendant, when demanded, the two hundred tons," &c., the whole request was vitiated; for there was no such provision in the paper containing the original offer to sell. The provision there found was—"if in stock unsold"—a very different thing from that embraced in the request; for even if the plaintiff did not have "in stock and unsold" the additional number of tons when ordered, the plaintiff might still have shipped them to defendant, by going into the market and buying from others. It is very clear, therefore, that this request, as presented, could not properly have been charged, and that the judge's remark when it was submitted was entirely correct.

The fifth ground: "That his honor erred in allowing the letter of G. W. McIver to be put in evidence for the purpose of contradicting the written contract of the plaintiff," cannot be sustained. In the first place, we do not see that any such objection was interposed when the letter was offered in evidence. But waiving that, it is quite certain that the letter was neither offered nor received for the purpose of contradicting

any written contract. On the contrary, it was offered as a part of the contract, and for this purpose was clearly competent.

The only remaining ground of appeal, imputing error to the Circuit Judge "in charging the jury in respect to matters of fact," is couched in such general terms as would justify us in disregarding it altogether, for in the exception there is no specification of any instance in which the clause of the constitution upon which this exception is based has been violated. But waiving this, we do not find anything in the charge to sustain the exception. In the folios of the "Case," to which we are referred in appellant's argument as indicating that the judge charged upon matters of fact, we do not see that there was any expression or even indication of opinion on the part of the Circuit Judge as to any question of fact; and, on the contrary, all such questions seem to have been fairly and fully submitted to the jury.

The judgment of this court is, that the judgment of the Circuit Court be affirmed.