(32 Misc. Rep. 558.)

## MONTAUK ASS'N v. DALY et al.

(Supreme Court, Special Term, New York County.   October, 1900.)

STATUTE OF FRAUDS—SALE OF REAL ESTATE—CONTRACT—INSUFFICIENT DELIV-
ERY.

Defendant, through his attorney, made an offer in writing for the pur-
chase of realty belonging to plaintiff, and submitted a formal contract
for the sale of the same.  Plaintiff executed the same, and its attorney
then took it and offered it to defendant's attorney, but the latter said that
his client did not then want to purchase.  The former replied that he
nevertheless felt· it his duty to hand him the paper, and thereupon the
latter said, "Very well," and took it, but, before doing so, very distinctly
informed the other that his client would not purchase.  *Held*, that there
was no valid delivery, and hence there was a failure to comply with Rev.
St. (9th Ed.) p. 1885, § 8, requiring a contract in writing, signed by the
party by whom the sale is to be made.

Action by the Montauk Association against Mary Daly, executrix
of Augustin Daly, deceased, and others, for the latter's failure to
perform a contract to purchase land.  Complaint dismissed.

De Forest Bros., for plaintiff.
George A. Lamb, for defendants.

ANDREWS, J.  The complaint alleges that on or about Septem-
ber 19, 1898, the plaintiff entered into a contract with Augustin
Daly, the testator of the defendants, for the sale to him of certain
real property owned by it, and known as the "Club-House Property,"
situated at Montauk, Suffolk county, in the state of New York,
for the agreed price of $12,000; that the plaintiff was at all times
mentioned in the complaint ready to perform said contract, but
that the said Augustin Daly failed and· refused to perform the same;
that subsequently the plaintiff caused such property to be sold at
public auction at the Real Estate Sales-Room, No. 111 Broadway,
city of New York, for the sum of $6,100, that being the highest bid
received for the same.  And the complaint demands judgment
against the defendants for the sum of $5,900, being the difference
between what the property brought at such auction sale and $12,000,
the alleged contract price, with interest from November 1, 1898.
The action was originally brought against said Augustin Daly, but,
he having died during the pendency thereof, the defendants, who
were his personal representatives, were substituted in his place.
The action has been prosecuted with great zeal and ability by the
plaintiff's attorney, but, after the most careful consideration, I have
reached the conclusion that, upon the evidence submitted, it is not
shown that a valid contract was ever entered into between the
plaintiff and the said Augustin Daly for the sale of the property
in question, for the reason that, assuming, as contended by the
plaintiff's attorney,—though not deciding,—that the contract was
one for the sale of land only, such contract, if any was made, was
not in writing and subscribed by the plaintiff, as required by the
statute of frauds.  The uncontradicted facts in the case are as fol-
lows:

Mr. Lamb, an attorney at law, representing Mr. Daly, had various interviews and negotiations with Mr. Alexander E. Orr, the treasurer of the plaintiff, in regard to the purchase of the property in question by Mr. Daly. Soon after these interviews and negotiations had been had, Mr. Lamb sent the following letter to Mr. Orr:

"George Alfred Lamb, Counselor at Law, Mutual Life Building, 32 Liberty Street.

"New York, September 19, 1898.

"Alexander E. Orr, Esq., Produce Exchange Building, New York City—Dear Sir: Mr. Daly authorizes me to make the following proposition for the purchase of the club-house property at Montauk: The purchase price to be $12,-000, 40% ($4,800) payable on the delivery of the deed, which Mr. Daly would like to have arranged, if possible, for November 1; the contract of sale, however, to be executed at once, and, say, $800 paid on the signing of the contract. The remaining 60% of the purchase price to be paid in three equal payments, of 20% each; the first payment to occur in four months, the second payment in eight months, and the third and last payment in twelve months. I hope very much that this proposition will be acceptable to you.

"Yours, very truly,　　　　　　　　　　　　George Alfred Lamb."

Subsequent to the date of this letter there were further interviews between Mr. Lamb and Mr. Orr in regard to the subject-matter thereof; and soon after Mr. Lamb called upon Mr. Robert W. De Forest, a member of and attorney for the plaintiff, taking with him a proposed contract for the sale of said property, which had been prepared by him. The provisions of this proposed contract were discussed between Mr. De Forest and Mr. Lamb, and some changes were agreed upon and made in the form thereof; and, having a map of the property before them at the time, they also prepared, and agreed upon, the description of the land to be conveyed. Mr. Lamb then took the proposed contract, so modified, back to his own office, and caused to be prepared a formal contract, in final form, and sent it to Mr. Orr for execution by the Montauk Association, inclosing it with the following letter:

"George Alfred Lamb, Counselor at Law, Mutual Life Building, 32 Liberty Street.

"New York, October 17, 1898.

"Alexander E. Orr, Esq., Produce Exchange Building, New York City—Dear Sir: Owing to the sudden death of my brother-in-law, I was called away last week to the northern part of the state, to take charge of his interests. I inclose you a copy of the agreement, which I understand is in form satisfactory to Mr. De Forest, to whom I have also sent a copy.

"Very truly yours,　　　　　　　　　　　　George Alfred Lamb."

On October 28, 1898, Mr. Lamb met Mr. De Forest at what is known as the "Downtown Club." Mr. Lamb's testimony, given at the trial, as to what took place between him and Mr. De Forest at this interview, is as follows:

"I saw Mr. De Forest at the Downtown Association and said to him that I had a very unpleasant mission to perform, and it placed me in somewhat an embarrassing position, as I had been negotiating for this property, believing that it would be purchased, and not doubting that the transaction would go through. I explained to him the reason that Mr. Daly, in the first place, had formed the idea of purchasing the property, which was, as previously testified, to provide a permanent home for Arthur Rehan, where they felt (Montauk being a rather inaccessible place) that he would be entirely out of danger

from associations or temptations that belong to a big city, but that recently his behavior had been such that they had simply despaired of being able to do anything with him, and did not wish to purchase the property; that Mr. Daly had very little use for the property himself, and had intended purchasing it for that sole reason. And Mr. De Forest said he was very sorry, and asked me to see Mr. Orr and explain the circumstances to him; and he also asked me to say (and I promised I would) to Mr. Orr that the delays in the negotiations were not due to his fault; that we had simply been unable to meet before, although Mr. De Forest had tried to make appointments; and he then said— He opened his bag (a brief bag, in which the contract executed by the Montauk Association was contained), and said he would like to hand that paper to me. I told him, of course, that Mr. Daly did not want to purchase the property. He said nevertheless he felt it his duty to hand me the paper. I said, 'Very well,' and took it; but previous to the receipt of the paper I had very distinctly and carefully informed Mr. De Forest that Mr. Daly would not purchase the property."

Mr. De Forest also gave testimony upon the trial as to this interview, but his evidence as to what occurred and as to the conversation between him and Mr. Lamb substantially agrees with that given by the latter, above quoted.

Upon these facts,—and they are all that are material to the decision of the question of law involved,—I cannot hold that a valid contract for the sale of the property in question was entered into between the plaintiff and Mr. Daly. The statute of frauds, in relation to the sale of lands, is as follows:

"Every contract for the leasing for a longer period than one year, or for the sale of any lands, or any interest in lands, shall be void, unless the contract, or some note or memorandum thereof, expressing the consideration, be in writing, and be subscribed by the party, by whom the lease or sale is to be made." Rev. St. (9th Ed.) p. 1885, § 8.

It is to be observed that the statute requires not only that the contract, or some note or memorandum thereof, should be in writing, but that it should also be subscribed by the party by whom the sale is to be made. Mr. Daly, through his attorney, Lamb, had made an offer in writing for the purchase of the property, and had submitted a formal contract for the sale of the same with his letter of October 17th. Mr. Lamb testifies that, between the date of this letter and the interview above mentioned with Mr. De Forest, he had seen his client, Mr. Daly, who had informed him that he did not wish to purchase the property, and had, in substance, instructed him to go no further with the negotiations for the purchase of the same. At the time of the interview, therefore, between Mr. Lamb and Mr. De Forest, above mentioned, Mr. Lamb had no authority to purchase the property, or to accept a contract for the sale of the same from the plaintiff or its attorney; but, leaving this want of authority out of the question, it plainly appears, both from the testimony of Mr. Lamb and Mr. De Forest, that there was no valid delivery of the contract of sale which had been executed on behalf of the plaintiff. In regard to such alleged delivery Mr. Lamb testifies as follows:

"I told him, of course, that Mr. Daly did not want to purchase the property. He said nevertheless he felt it his duty to hand me the paper. I said, 'Very well,' and took it; but previous to the receipt of the paper I had very distinctly and carefully informed Mr. De Forest that Mr. Daly would not purchase the property."

This testimony of Mr. Lamb is not contradicted by Mr. De Forest in his account of the conversation that was had. How, then, can it possibly be claimed that there was a contract in writing made between the plaintiff and Mr. Daly for the sale of the property, subscribed by the former? Mr. Daly, through his attorney, had made an offer for the property, in writing, but this offer could not bind Mr. Daly unless it had been accepted by the plaintiff before it was withdrawn. Until such acceptance Mr. Daly had the absolute right to withdraw it, and it appears by the evidence that he did so. At the interview between himself and his attorney prior to the interview between the latter and Mr. De Forest at the Downtown Club, he had told his attorney that he would not purchase the property, and at such last-mentioned interview his attorney informed Mr. De Forest of that fact; and the handing by Mr. De Forest of the contract of sale, subscribed by the plaintiff or its president, to Mr. Lamb, under the circumstances, was a nullity. It cannot be claimed upon the evidence, so far as I can see, that there ever was any proposed contract in writing, subscribed by the plaintiff or its representative, except the one above referred to; and, as there was no valid delivery of that, the conclusion necessarily follows that the provisions of the statute of frauds above quoted were not complied with, and the plaintiff for that reason cannot recover in this action. The views above expressed render it unnecessary to consider the other questions raised and discussed in the briefs of counsel. The defendants are entitled to judgment dismissing the complaint, with costs.

Complaint dismissed, with costs.