## HARTER *v.* MORRIS.

[No. 9,730. Filed April 24, 1919. Rehearing denied June 27, 1919. Transfer denied January 14, 1920.]

1. APPEAL.—*Briefs.—Sufficiency.—Rules.*—Where appellant's brief contains enough and is so arranged as to advise the court of the questions presented, and shows a good-faith effort, the purpose of Rule 22, clause 5, of the court has been served, although the rule may not have been strictly followed.     p. 196.

2. SPECIFIC PERFORMANCE. — *Complaint. — Definiteness.* — A complaint for specific performance, to be sufficient, must allege facts sufficient to enable the court, upon a default, to draft the decree from its averments.     p. 196.

3. SPECIFIC PERFORMANCE.—*Complaint.—Contract for Land Exchange.—Certainty.*—A complaint in an action for specific performance of a contract for the exchange of lands is insufficient for uncertainty of the contract, where it provided that one of the parties was to execute a note to the other containing "the usual prepayment privileges," since the court could not say, upon default, what such privileges are.     p. 196.

4. SPECIFIC PERFORMANCE.—*Contract.—Degree of Certainty Required.*—More certainty is required in a contract where specific

performance is invoked than where damages· are sought at law. p. 196.

5. PLEADING.—*Contract.—Construction by Parties.—Specific Performance.*—Where the complaint for specific performance does not plead the construction placed on the contract upon which it is based, the court cannot consider such construction in aid of the pleading.     p. 197.

6. SPECIFIC PERFORMANCE.—*Equity.—Discretion.*—An application for specific performance is not a matter of right, but.is addressed to the sound discretion of the court, in view of all the circumstances, to be exercised under the established rules and practice in equity, which are advisory rather than mandatory.     p. 199.

7. SPECIFIC PERFORMANCE.—*Contracts Enforceable.—Characteristics Essential in General.*—To be specifically enforceable, a contract must be certain, just and equal in all its parts, and for an adequate consideration; it must not have been obtained under unfair circumstances, nor be hard or unconscionable; it must be capable of being performed without adding to its terms; and nothing must be left to the future.     p. 199.

8. SPECIFIC PERFORMANCE.—*Equity.—Remedy at Law.—Nonenforcement of Contract Working Fraud.*—To obtain specific performance it must appear that plaintiff has no adequate remedy at law, and that a refusal to perform the contract would be a fraud upon him.     p. 199.

9. SPECIFIC PERFORMANCE.—*Contract Unfair.—Plaintiff Without Fault.*—Even though plaintiff be blameless, if there be a want of equality or fairness in the contract, the· court will not grant a specific performance thereof.     p. 199.

10. SPECIFIC PERFORMANCE.—*Contract.—Fairness.—Determining.*—In. determining the fairness of the contract, the court will look to the surrounding circumstances, such as incapacity, inequality of the parties, manner of executing the contract, the experience or inexperience of the contracting parties, and their opportunity to advise with others of experience in such transactions.     p. 199.

11. SPECIFIC PERFORMANCE. — *Equity. — Balancing Results.* — If greater wrong is likely to result to defendant through a specific performance than will be suffered by plaintiff in its absence, equity will deny it.  p. 199.

12. SPECIFIC PERFORMANCE.—*Consideration.—Statu Quo.*—The court will consider the facts that plaintiff has not parted with any consideration, and that he is in *statu quo* at the commencement of the suit.     p. 199.

13. SPECIFIC PERFORMANCE.—*Land Exchange Contract.—Evidence.—Equities.*—In a suit for specific performance. of a land exchange contract, between an experienced real estate agent with wide con-

Harter *v.* Morris—72 Ind. App. 189.

nections and an inexperienced farmer, in which there were involved questions of ignorance of, and inequality in, the values exchanged, representations of the character of the soil of certain lands and the possible collusion of another agent, *held* that the equities of the case are against a specific performance.   p. 200.

14. FRAUDS, STATUTE OF.—*Real Property.—Contract for Exchange. —Proposal and Acceptance.*—A contract for the exchange of lands, in form a proposal to the plaintiff, being for the sale of real estate, must, in order to bind plaintiff to convey his tract, under §7462 Burns 1914, §4904 R. S. 1881, be in writing and signed by him, and he could not satisfy the statute by signing an acceptance of such a contract and keeping it within his own control without making any delivery thereof to the other party.   p. 202.

15. SPECIFIC PERFORMANCE.—*Contract.—Mutuality.*—A land exchange contract not specifically enforceable against the plaintiff cannot be specifically enforced in his favor.   p. 204.

16. APPEAL.—*Briefs.—Rules.—Condensed Recital of Evidence.— Presumptions.*—The condensed recital of the evidence furnished in appellant's brief under Rule 22 of the Supreme and Appellate Courts, will be taken to be correct unless challenged by appellee. p. 205.

17. CONTRACTS.—*Execution.—Delivery.—Statute of Frauds.*—Where by the statute of frauds a written and signed proposal for an exchange of lands requires a written acceptance thereof to be delivered to the proposing party, the leaving of such proposal with an acceptance indorsed thereon, among other papers, with an attorney, with a stipulation signed by both parties, that such papers were not to be returned except upon their mutual agreement, cannot be construed as a delivery of the acceptance to the party entitled thereto.   p. 205.

From Marion Circuit Court (21977); *Louis B. Ewbank,* Judge.

Action by J. Edward Morris against Richard R. Harter. From a judgment for plaintiff, the defendant appeals. *Reversed.*

*William A. Hughes, John L. Murray, U. C. Stover, Felt & Forney, Hall & Campbell* and *David R. Major,* for appellant.

*Weyl & Jewett* and *John F. Robbins,* for appellee.

NICHOLS, J.—This is a suit in equity by the appellee against the appellant to compel the specific performance of a contract for the exchange of real estate. The appellant demurred to the second amended complaint, which demurrer was overruled and to which ruling appellant excepted. Appellant then answered by general denial and other special answers to which a reply was filed by the appellee. The cause was tried by the court, and a finding and judgment rendered for appellee, decreeing specific performance of the contract sued on. After motion for a new trial, which was overruled, the appellant prosecutes this appeal.

The errors assigned and relied upon for the reversal of the judgment are: (1) The court had no jurisdiction over the subject-matter of the action. (2) The court erred in overruling the demurrer to the second amended complaint. (3) The court erred in overruling the motion for a new trial.

The second amended complaint filed by the appellee is in substance as follows: On August 17, 1911, the appellant was the owner in fee simple of the following described real estate in Rush county, Indiana (description), containing in all 84.17 acres. On said date appellant made a written offer or proposition to the appellee to exchange said real estate for 365 acres of land owned by the appellee in Starke county, Indiana (description). By the terms of said written proposition appellant agreed to accept the farm of the appellee subject to a $3,000 mortgage due January 1, 1913, and drawing six per cent. interest, and it was therein stipulated that the said Harter should retain possession of his farm until January 1, 1913, with the exception that the appellee would be per-

mitted to sow wheat during the fall of 1911, upon
any part of the farm of said appellant; appellant
was to have possession of said Starke county farm as
soon as the deal between appellant and appellee was
closed and consummated and appellant was also by
said proposition to give the appellee a first mortgage
of $1,800 on the Starke county land in the manner
provided for in said proposition; appellee and appel-
lant were each to furnish a good abstract of title
brought down to date showing good fee-simple title
in said parties respectively, free and clear from any
and all liens and incumbrances, except those men-
tioned in said proposition, and appellant and appellee
were to assume and pay the taxes for 1911 on each
farm so exchanged. In order to be effective, said
proposition was to be accepted by the appellee and
his wife on or before 7 o'clock p. m. of August 18,
1911; appellee and his wife accepted said proposition
at 9:30 o'clock a. m. August 18, 1911, and at said time
so notified appellant of such acceptance, and such
acceptance was indorsed on said proposition and a
copy of said proposition sent to said appellant. The
contract and acceptance are marked exhibit A and
made a part of the complaint. The Starke county
land was worth the reasonable value of $25 per acre
and the appellant's land was worth the reasonable
value of $110 per acre, and said farms were of such
respective values at all times hereinbefore referred
to. The Rush county land owned by appellant was
at all times referred to as of "peculiar" value to the
appellee by reason of the location thereof; said land
is located near the Indianapolis and Eastern Trac-
tion Company's line of railway and on and near the
National Road and is of easy access to the city of

Indianapolis, in which the appellee resides; that unless appellee is granted specific performance of this contract he will suffer irreparable damages and injury which cannot be fully compensated in damages and appellee has not an adequate remedy at law; that appellee has duly performed all conditions of said agreement on his part to be performed and prior to the bringing of this action tendered to appellant the deed in fee simple of the Starke county land, duly executed and acknowledged by appellee and his wife with covenants of general warranty, and demanded of appellant that he perform his part of said contract by executing to this appellee a deed, mortgage and note as provided in said contract. Appellant refused and still refuses to perform his part of the contract. Appellee is still willing to comply with his said contract and to deliver said deed for the said Starke county land, and now brings the same into court together with the abstract of title down to date showing a good fee-simple title in appellee, free and clear from all incumbrances for the use of the appellant. There is a demand that the appellant be required specifically to perform said agreement.

Exhibit A, which is the offer and acceptance and which is made the basis of the suit, is as follows:

"Indianapolis, Indiana.
August 17, 1911.

"Mr. J. Edward Morris,
"City.

"Dear Sir: I hereby agree to the following exchange of farms and on the basis hereinafter mentioned as follows: I will give you my farm upon which I now reside consisting of 84.17 acres more or less and located about 1¼ miles south

of Charlottesville, Indiana, and in the northwestern part of Ripley Township of Rush County, Indiana, the same being all and the only land now owned by me in said township and county at this time, for your tract of 360 acres of land being the N. E. Quarter and the north half of the S. E. ¼ and the east ½ of the N. W. ¼ and the N. E. ¼ of the S. W. ¼ all in Section 11, Township 35 north, range 1 west, Washington Township, Starke Co., State of Indiana.

"You are to accept my farm subject to a $3,000 mortgage due January 21st, 1913, and drawing 6 per cent. interest and allow me possession until January 1st, 1912 with the exception that you will be permitted to sow wheat this Fall on any part of the farm you desire.

"It is understood that I am to have possession of the Starke County farm as soon as the deal is closed and I am to give you a first mortgage of $1,800 on the land drawing 6 per cent. from date of closing, said note to mature January 21st, 1913, and to provide the usual prepayment privileges.

"It is understood that each of us are to furnish good abstract brought down to date showing good fee-simple title in us free and clear of any and all liens and incumbrances whatsoever except those herein mentioned and except also that each of us agree to assume and pay the taxes of 1911 due and payable in 1912 on each farm.

"It is also understood that conveyances are to be made by good and sufficient general warranty deed properly executed.

"This proposition to be effective must be accepted by you and your wife on or before 7:00 o'clock P. M. August 18th, 1911.

"R. R. Harter.

"Accepted 9:30 A. M., August 18th, 1911.

"J. Edward Morris.

"Isa Morris."

The demurrer to this complaint was for want of facts to constitute a cause of action against the appellant.

Appellee contends that appellant has presented no question for the consideration of this court for the reason that he failed to comply with clause 5, 1. of Rule 22 of the court in the preparation of his brief. While it is true that appellant has not strictly followed said rule, still his brief contains enough and is so arranged as to advise the court of the questions presented. A good-faith effort is shown and the purpose of the rule has been served. *Repp* v. *Indianapolis, etc., Traction Co.* (1916), 184 Ind. 671, 675, 111 N. E. 614; *Howard* v. *Adkins* (1906), 167 Ind. 184, 78 N. E. 665; *Foote* v. *Foote* (1913), 53 Ind. App. 673, 102 N. E. 393; *Berkey* v. *Rensberger* (1912), 49 Ind. App. 226, 96 N. E. 32; *Geisendorff* v. *Cobbs* (1911), 47 Ind. App. 573, 94 N. E. 236.

It has been expressly held by both the Supreme and Appellate Courts of this state that a complaint for specific performance to be sufficient should 2-4. allege facts that would have been sufficient upon a default to enable the court to draft the decree from its averments. *Burke* v. *Mead* (1902), 159 Ind. 252, 259, 64 N. E. 880; *McCauley* v. *Schatzley* (1909), 44 Ind. App. 262, 88 N. E. 972. Applying this principle of law to the complaint in suit, we

must hold that it is insufficient to withstand the appellant's demurrer. The complaint is based upon a contract that provides, among other things, that an $1,800 first mortgage is to be executed by appellant to appellee which should draw six per cent. interest from date of closing to maturity, January 21, 1913, and that such note should provide for "the usual prepayment privileges." We are not prepared to say what such usual prepayment privileges are. Sometimes the privilege granted is to make prepayment at the will of the mortgagor, sometimes to make payments at interest-paying dates, sometimes quarterly, or semiannually, or annually. There is no certain amount which appellee will be permitted to prepay. The contract is certainly indefinite as to the privileges of payment that should be granted to appellant, and we do not see how the court in rendering a decree for specific performance upon default could have determined upon the privilege to be extended. If he could not do so, then the complaint does not measure up to the requirements of the authorities cited. It is not necessary for the purpose of the demurrer to the complaint that we shall decide that the contract is an illegal contract, or that there is no remedy at law under it. We do decide, however, that more certainty is required in a contract where specific performance is invoked than is required where the remedy is sought at law by way of damages. The contract may be legal and yet of such a character that specific performance thereof will not be enforced.

Appellee, in his brief, has quoted at length the opinion of the trial court in which such court, speaking with reference to the $3,000 mortgage, states that from the language alone it would necessarily follow that he, appellee, assumed

what was due on the mortgage, further accrued interest, or interest from and after the transaction. This statement is ambiguous to us, but, if we rightly interpret it, it does not seem to have been the interpretation placed upon this particular part of the contract by the appellee. It appears by appellee's original complaint, which was introduced in evidence, that at the time certain papers were thereafter placed in the hands of a third person, it was mutually agreed between the appellee and the appellant that the appellee should assume the interest on such mortgage at the rate of six per cent. interest per annum from the date of the consummation of the transaction. We quote this, together with the statement from the opinion of the trial court, for the purpose of showing the confusion in the minds of the persons involved in the transaction, and of the court, as to the matter of the interest upon the $3,000 mortgage, and for the purpose of confirming our opinion that the contract was uncertain and indefinite as to this interest. Appellee contends that the construction which the parties thereafter put upon the contract by the execution of the deeds and mortgage, which were deposited with a third party, may be considered by the court in determining the intention of the parties; and that such construction was put upon it by the acts of the parties as to make the contract certain and definite, even if it be conceded by appellee that there was any uncertainty in it. But we are now passing upon the sufficiency of the complaint which is based upon the contract, in which complaint we find nothing pleaded that shows the construction placed upon the contract by the parties. The complaint is insufficient and the demurrer to it should have been sustained. *Williams*

*v. Stewart* (1879), 25 Minn. 516; *Burnett* v. *Kullak* (1888), 76 Cal. 535, 18 Pac. 401; *Moore* v. *Galupo* (1903), 65 N. J. Eq. 194, 55 Atl. 628.

In his motion for a new trial, appellant challenges the sufficiency of the evidence to sustain the finding and judgment of the court. In determining this question, we do so with the following established principles of equity jurisprudence before us: An application for specific performance is not a matter of right, but is addressed to the sound discretion of the court, in view of all the circumstances. The application of the principle is guided by established rules and practice in equity, which are advisory rather than mandatory. The contract must be certain, just and equal in all its parts, and for an adequate consideration. It must not have been obtained under unfair circumstances, and it must not be hard or unconscionable. It must be capable of being performed without adding to its terms and nothing must be left to the future. It must appear that the plaintiff has no adequate remedy at law, and that a refusal to perform the contract would be a fraud upon him. It is not necessary that the plaintiff be convicted of fraud in order that specific performance be denied him. There may even be no blame attached to him, but, if there is a want of equality and fairness within the contract itself, the court will not exercise its extraordinary jurisdiction in specific performance. In determining the fairness of the contract, the court will look to the surrounding circumstances, such as incapacity or inequality of the parties, the manner of the execution of the contract, the experience or inexperience of the contracting parties and their opportunity to advise

with others of experience in such transactions. If greater wrong is likely to result to the defendant on account of the granting of specific performance than the plaintiff will suffer in case it is withheld, equity will deny it. The court will consider the facts that the plaintiff has not parted with any consideration, and that he is in *statu quo* at the commencement of the suit. *Ash* v. *Daggy* (1855), 6 Ind. 259; *Modisett* v. *Johnson* (1831), 2 Blackf. 431, 439; *Louisville, etc., R. Co.* v. *Bodenschatz Stone Co.* (1895), 141 Ind. 251, 263, 39 N. E. 703; *Gas Light, etc., Co.* v. *City of New Albany* (1894), 139 Ind. 660, 39 N. E. 462; *Ames* v. *Ames* (1910), 46 Ind. App. 597, 91 N. E. 509; *Horner* v. *Clark* (1901), 27 Ind. App. 6, 60 N. E. 732; *Mather* v. *Simonton* (1881), 73 Ind. 595; *Shubert* v. *Woodward* (1909), 167 Fed. 47, 92 C. C. Q. 509; *Starcher Bros.* v. *Duty* (1907), 61 W. Va. 373, 56 S. E. 524, 9 L. R. A. (N. S.) 913, 123 Am. St. 990; *Friend* v. *Lamb* (1893), 152 Pa. 529, 25 Atl. 577, 34 Am. St. 672; *Falcke* v. *Gray* (1859), 4 Drewry 651; 3 Elliott, Contracts §2277; *Willard* v. *Tayloe* (1869), 8 Wall. 557, 19 L. Ed. 501.

It appears by the undisputed evidence in this case that appellee was, at the time of the transaction involved, a real estate agent of several years' experience, and located in the city of Indianapolis; that he was at said time president of the Indiana Real Estate Association; that he owned 360 acres of undrained, unimproved and uncultivated land in Starke county, Indiana, which he had advertised in the Indianapolis News, and by this means his negotiations opened with appellant; that appellant was a farmer, owning a farm in Rush county, Indiana, consisting of 84.17 acres of well-improved

land in a good state of cultivation, upon which he had lived alone, and which he had farmed for about twelve years; that he knew nothing of Starke county land and farming conditions in that country, and, except for the hour, or at most two hours of inspection of the 360-acre tract involved he necessarily depended in a large measure upon appellee for his knowledge thereof. On August 17, 1911, appellant met appellee in Indianapolis, and together they visited the Starke county land. Arriving at Plymouth, a few miles from the land, appellant says: "Had some difficulty in getting a conveyance, I ran into Mr. Garns that I had met before. We took lunch along and went out to the land in an automobile. Mr. Garns having lived in the neighborhood, Mr. Harter asked him some questions." Mr. Garns later testified that he was a real estate agent and had been for about nine years, and that he lived at Plymouth; that he had this land listed for sale, and on this day had a talk with appellee before he met appellant, after which he took them to the land in his automobile. Appellee did not know of Mr. Garn's agency. Without going into details of the hour or two hours of inspection of the land, we note that by some means appellant received an exalted impression of its present and prospective possibilities and value as compared with that given by appellee's witnesses who lived near the land and were acquainted with it. Appellant says that appellee told him that 140 acres of the land, or like that, was suitable for onion culture, while appellee's witness Haines says that it is not onion land. Witness Boots says that there is some onion land in northeast corner. Witness Watkins says, if land were cleared, that only a small part would be suitable for onions.

Witness Peters says that he understands that the north part would be suitable for onion culture—might be forty to sixty acres suitable, and that he knows of "raise in price of from $7.00 to $100.00 per acre on onion land." This possible increase in the value of the onion land together with appellee's representation of the onion acreage, which representation he does not dispute, may account for the appellant's exalted impression of its present and prospective value as compared with its value as an onion proposition as given by appellee's own witnesses. This value as fixed by appellee's witnesses is much discounted by appellant's witnesses. After the inspection of the land, the parties returned to Indianapolis where they arrived at about eleven o'clock at night, negotiating the terms of their deal on the way.

Arriving in Indianapolis, they went to the appellee's private office, where the appellee wrote the proposition involved in this suit, which was thereupon signed by the appellant between eleven and twelve o'clock at night, and then left with the appellee for acceptance by himself and wife. We do not deem it necessary to go further into details regarding the negotiations between the appellant and appellee for the purposes of this decision, though, viewing the transaction as a whole, we are satisfied that the equities of the case are with the appellant and that the specific performance should not be enforced, but we do not rest our decision on this conclusion alone.

At 9:30 on the next morning the acceptance was signed by the appellee and his wife. However, it was never delivered to the appellant. That afternoon, appellee testifies, that he told appellant that they had accepted the proposition and says

that he had the contract there and exhibited it to Mr. Hughes. He also says that he showed appellant that he had accepted, but appellant says that he did not see it until long after the suit was brought. Witness Hughes, one of the attorneys for the appellant, says that the contract was not produced, that it was not shown to him the next day, and that he never saw it until it was thereafter produced for inspection by attorneys for the appellee in their office in the city of Rushville. There is no claim made anywhere that there was a delivery of the acceptance by the appellee to the appellant. This failure to deliver an acceptance of the contract to the appellant, or to place it with certain papers prepared upon that occasion and deposited with Mr. Hughes, may be accounted for by the fact that it appears by the evidence that both the appellee and the appellant had stated that they might not want to go ahead with the deal. The contract being for the sale of real estate, in order to bind the appellee under the statute of frauds, must of neessity be in writing and signed by him. §7462 Burns 1914, §4904 R. S. 1881. An oral acceptance of a contract of sale of land has been held sufficient, but this was in a contract of sale in which there was a money consideration. In the case now being considered, the contract was for an exchange of lands which contemplates a sale, not only by appellant, but also by the appellee, and he could not satisfy the statute by signing an acceptance of such a contract and then placing it in his pocket without delivering, thereby keeping it within his own control. He did not thereby bind himself to convey his tract of real estate to the appellant. *Montauk Assn.* v. *Daly* (1900), 32 Misc. Rep. 558, 67 N. Y. Supp. 312.

It will hardly be contended that, if appellant had brought this action against appellee to compel him to convey to appellant the Starke county land under this same contract, he could have prevailed in his suit, for appellee would have been permitted to show that there has been no valid acceptance of the contract on his part. If the contract could not be enforced against the appellee because of the want of valid acceptance, then certainly appellee should not be permitted to enforce performance of the contract when he himself is not bound thereby. If there was a valid acceptance of this contract, and its specific performance were enforced, then the appellant would be put in possession of the Starke county land, undrained, uncultivated and without improvements, incumbered with an $1,800 mortgage and without the necessary means of paying it, with which mortgage the land must be incumbered as a part of the transaction. The appellee has not parted with any consideration for the real estate, the conveyance of which he seeks to enforce, and was at the commencement of the suit in *statu quo*. The refusal to enforce performance of the contract can work no fraud upon him. We are satisfied that a greater wrong is likely to result to the appellant if specific performance is enforced than the appellee would suffer in case it is denied. We cannot hold in this case that the appellee will suffer irreparable injury by reason of any failure in the performance of the contract, and that at the time of the commencement of the suit, if he had made a valid acceptance, we hold that he had a complete remedy at law.

The judgment is reversed, with instructions to the trial court to grant a new trial, and to sustain the demurrer to the second amended complaint, and for

such other proceedings as are in harmony with this decision.

## ON PETITION FOR REHEARING.

NICHOLS, P. J.—Counsel for appellee state in their brief on petition for rehearing that the court's statement in its opinion that there was never a delivery of the acceptance by the appellee to the appellant is somewhat remarkable, in view of the fact that appellant himself testified on the trial of the cause to the delivery of the acceptance to him by the appellee. Counsel then quote from the record to the effect that the appellant stated that he got possession of this contract August 18, 1911, which was the next day after appellant had signed it in the office of appellee. There is no statement of this evidence in appellant's brief. The record in this case consists of over 1,000 pages and, under Rule 22 of the Supreme and Appellate Courts, it was the duty of the appellant to give a condensed recital of the evidence in narrative form in his brief so as to present the substance clearly and concisely, and this statement is taken to be correct unless challenged by the appellee.

Appellee states in his brief that the contract was delivered to appellant on August 18, and that he gave the same to Mr. Hughes, his attorney. The papers that were delivered to Mr. Hughes were delivered under the following written agreement:

"These papers left with Wm. A. Hughes and not to be returned except upon mutual agreement of Richard R. Harter and J. Edward Morris. This 18th day of August, 1911."

"J. Edward Morris      Richard R. Harter."

If this contract had been with the papers delivered to Mr. Hughes, such a delivery could not have been construed as a delivery to the appellant. It appears by appellant's brief, as well as by the record, that the appellant on cross-examination, upon having his recollection refreshed, corrected his testimony as to such delivery and said that he never had a contract in his possession after he left it with the appellee on the night of August 17, 1911, except to examine it; that he thought he saw it the next day; that he thought it was left with the papers with Mr. Hughes, but of this he was not certain. Afterward he saw it in the office of his attorney, Campbell, in Rush county, after suit had been brought, and that it had been produced in court there after suit was brought, and that he and his attorney had an inspection of it. Mr. Hughes, who was the attorney in whose office the business was transacted August 18, 1911, testified that the contract was not to his knowledge in his office at the time, and that he never saw it until it was produced by the appellee in the office of Hall and Campbell at Rushville. Upon that occasion he and the appellant went to Rushville and examined the contract.

This evidence is in harmony with the statement of the appellee, who claimed that, on August 18, he exhibited the contract to the appellant without saying that he delivered it, and it shows, without contradiction, that the instrument remained in the hands of the appellee, except as he delivered it to the appellant after suit for inspection and for use in the trial.

The question quoted in appellant's brief, to wit: "Have you any contract in your possession between

you and Mr. Morris for the exchange, of your farm for that of Mr. Morris in Starke county?'' It was answered, ''I have a written proposition that I made him and which I signed,'' has to refer to the possession of the contract under the order of the court aforesaid, and for the inspection and use at the trial.

The petition for rehearing is overruled.