WHEELOCK ET AL. *v.* WHEELOCK ET AL.

[No. 14,415. Filed October 20, 1933.]

502

*J. H. & A. L. Aiken* and *Otto E. Grant,* for appellants.

*Howard L. Townsend, Albert E. Thomas* and *Harry H. Hilgemann,* for appellees.

DUDINE, J.—The court, on its own motion, now sets aside its ruling heretofore made herein on the 28th day of September, 1933, denying appellee's petition for re-hearing.

The court now renders the following opinion, super-seding, and in lieu of, the opinion heretofore rendered by this court herein upon the 8th day of June, 1933, to wit:

The word "appellee," when used in this opinion and not otherwise designated, means appellee Anna J. Wheelock. The word "bank" when used in this opinion means the First and Tri State National Bank of Fort Wayne, formerly First National Bank of Fort Wayne.

The facts in this case as they were found by the court are, in substance, as follows: Appellee married Kent K. Wheelock (deceased) in 1913. At the time of his

marriage he had three children by a former marriage, a son and two daughters, whose names are George Wheelock, Ruth Wheelock, and Gara Katherine Wheelock Dilworth. Appellee and her said husband lived together as husband and wife until his death which occurred December 28, 1928.

On the 19th day of February, 1921, appellee and her husband entered into a post-nuptial agreement which was in words and figures as follows:

"This writing made and entered into this 19th day of February, 1921, by and between Kent K. Wheelock, party of the first part, and Anna J. Wheelock, party of the second part, witnesseth: that whereas party of the first part has been married previous to his marriage with party of the second part, and

Whereas there were children born to said first party as a result of his former marriage, and that second party is childless, and whereas said first party owned considerable real estate and money at the time he married second party, and

Whereas said second party had considerable money at the time she married said second (first) party, and whereas said second party has assisted and aided said first party in saving and accumulating a considerable amount of money since their marriage.

Be it therefore agreed by and between the parties that for the consideration of each releasing his or her rights respectfully in each others property in the event of the death of either of said parties, It is hereby agreed as follows, to wit:

—1—

That said first party is to transfer to some third person and to have transferred to first and second parties jointly the following described property, to wit: Lots 25 and 26 in Zollars Park Addition to the city of Fort Wayne, Indiana.

—2—

It is further agreed that said second party in conveying the north 42 feet of lots 425, 426 and 427 of Hanna's addition to the city of Fort Wayne, Indi-

ana, and lots 3 and 4 J. H. Vesey's First Addition to the city of Fort Wayne, Indiana, to some third party, and to have transferred by said third party to Kent K. Wheelock, Gera Katherine Dilworth and Ruth Wheelock, jointly.

It is further agreed that if said second party survive said first party said second party shall for the consideration above named agree to take life estate in all personal property owned by said first party at the time of his death, exempting therefrom the sum of twenty-two thousand dollars ($22,-000.00) of personal property, being the amount of personal property owned by said first party at the time of his marriage to said second party, in lieu of any interest that might vest in her due to the statutes of descent of the state of Indiana, and that in event first party shall survive second party he hereby waives all rights he may have in second parties' estate.

"It is further agreed that said second party does hereby waive any rights that she may have to said twenty-two thousand dollars ($22,000.00) and that said first party shall dispose of same as he may see fit.

It is further agreed that said second party will take under a will drawn by said first party provided it is in accordance with this said contract.

In witness whereof the parties have hereunto set their hands and seals this 19th day of February, 1921.

Kent K. Wheelock. (Seal.)<br>
Anna J. Wheelock. (Seal.) "

All the conveyances of real estate agreed to in the agreement were duly executed.

On December 7, 1921, about ten months after the execution of the post-nuptial agreement, decedent, his two daughters and appellee conveyed the north 42 feet of Lots 425, 426 and 427 in Hanna's Addition to the city of Fort Wayne, to Arthur A. Berry and Grace M. Berry for forty thousand dollars ($40,000.00). On March 13, 1924, a little more than three years after the execution of the post-nuptial agreement, said grantors con-

veyed Lots 3 and 4 in J. H. Vesey's Addition to the city of Fort Wayne to Frank J. Farra for one thousand dollars ($1,000.00). These two pieces of real estate were the same plots which were transferred to a third party by appellee and decedent, and re-transferred to decedent and his two daughters pursuant to said post-nuptial agreement.

On February 6, 1923, about two years after the post-nuptial agreement was executed, said decedent entered into a trust agreement with First National Bank of Fort Wayne, in favor of his daughter Gara. By said agreement said bank acknowledged the receipt of certain securities from said decedent, to be held by it as trustee, with authority to "hold, manage, invest and reinvest the same, to receive and collect the income, rents, issues and profits thereof during the lives of Gara Katherine Wheelock Dilworth, . . . and of Ruth Wheelock, . . . and of the survivor of them. . . . During such portion of the trust period as the donor (decedent) shall live the net income . . . shall be paid or applied to use of the donor. . . . After the death of the donor the said net income . . . shall be paid . . . to . . . Gara Katherine Wheelock. . . ."

Said trust agreement provided for a termination of the trust by the trustor on the 31st day of December, 1923, and on the 31st day of December of each year thereafter, by giving a written notice to the trustee of such termination not less than ten days nor more than forty days prior to such date, but the record does not show that the trustor gave such notice, or desired to terminate the agreement.

Said trust agreement further provided for continuance of said trust after the death of said Gara, and for a termination thereof. Said further provisions are not, however, germane to this appeal, and therefore we will not discuss them.

On the same day in February, 1923, said decedent, entered into another trust agreement with said bank in favor of his daughter Ruth Wheelock, which agreement is identical with said trust agreement in favor of his daughter Gara, except that the names of the daughters were interchanged and except that said bank acknowledged the receipt of other securities from the decedent.

Decedent died testate. His will was duly probated. By item one thereof, he provided for the payment of his debts; by item two he gave his son George one thousand dollars ($1,000.00) ; by item three he gave his wife his home . . . "together with my household furniture and effects situated in my said home, together with my motor and electric car.". The "home" was the same real property which was transferred to a third person and re-transferred to appellee and decedent jointly, pursuant to the post-nuptial agreement. By item four he gave all the residue of his personal property, *"except so much as may have been placed in trust for the use and benefit of my daughters* . . . unto the First National Bank of Fort Wayne, Indiana, as trustee," with authority to "hold, manage, invest, reinvest . . . receive and collect the income . . . during the natural life of my beloved wife, Anna J. Wheelock. During the period of said trust, said trustee shall pay or apply the net income . . . to Anna J. Wheelock, my wife, for and during her natural life. . . ." Said item four further provided for a disposition of said fund after the death of appellee. Said further provisions are not, however, germane to this appeal, and therefore we will not discuss them.

Appellee filed a claim in decedent's estate wherein she alleged her marriage to decedent, the execution of said post-nuptial contract, the performance of all the conditions and agreements in said contract to be performed by her, and the execution of said two trust agreements.

She further alleged in the complaint that said trust in favor of Gara Katherine Wheelock Dilworth contained approximately $96,125.00 at the time of decedent's death, and that said trust in favor of Ruth Wheelock contained approximately $92,875.00 at the time of decedent's death; that the administrator of decedent's estate "inventoried approximately $40,000.00 as belonging to the estate of said decedent, out of which the corpus of this claimant's (appellee's) life estate will be made. . . . That said decedent by Item 4 of his will pretends to comply with the contract entered into between him and this claimant (appellee) as hereinbefore set out, but in order to so comply . . . (decedent) should have included in said residuary clause designated as Item 4 of his will the property which he pretended to place in trust for the use and benefit of his daughters." She also embodied said post-nuptial agreement and said two trust agreements in her claim.

In the prayer of her claim she asked that the administrator "be required to bring into the estate of said decedent all of the personal property hereinbefore referred to and embodied in said trusts and put the same in the corpus of the fund provided for in the fourth clause of testator's will, as the basis of the life estate of this claimant (appellee) . . . and that said decedent's estate be required to specifically perform the provisions of said contract between decedent and this claimant (appellee) hereinbefore set out."

On petitions, the following were made parties to the action, viz: said bank, as trustee for each of said daughters, respectively, and each of said daughters, and Thomas Wheelock Dilworth, devisee by will of decedent, and Katherine Earle Dilworth who is a daughter of Gara, and a future beneficiary under the trust agreements. Said bank was appointed administrator of decedent's estate with the will annexed.

On May 7, 1930, Gara filed a complaint against said bank as trustee, and against appellee, praying specific performance of said trust agreement in her favor and a judgment enjoining appellee from interfering in any manner with the performance of said trust.

On motion of said bank, said cause instituted by Gara, was consolidated with said cause instituted by appellee.

Said bank, as trustee, filed an answer to Gara's complaint, alleging the execution of said trust agreements, and embodying itemized statements of the property received by it under each of said agreements, and showing changes of investment made to date, etc., and praying for an order authorizing it as trustee to continue said trusts.

Appellants, Ruth and Gara Wheelock, filed a motion to make appellee's claim more specific, which contained nine specifications, numbered one to nine, inclusive. The court sustained said motion as to specifications numbered five and six and overruled it as to all other specifications. Appellee filed a "bill of particulars" as to said specifications numbered five and six, which are not germane to this opinion.

Thereupon all cestui qui trustents under said trust agreements filed a joint and several demurrer to appellee's amended claim, which was overruled, and appellants filed an answer in general denial to appellee's claim.

Trial was had by the court, who, upon request, made a special finding of facts. The substance of these findings have been set out in the beginning of this opinion. The additional facts found by the court, which we deem of sufficient importance to set out in this opinion, are that the proceeds of the real estate sold to Arthur A. Berry and Grace M. Berry ($40,000.00), and the proceeds of the real estate sold to Frank J. Farra

($1,000.00) were included among the funds in the trusts held by the bank.

The court stated conclusions of law as follows: (1st.) That decedent died the owner of all the property in said trusts, and inventory, subject to the terms and conditions of said trust agreements, and subject to said post-nuptial agreement, and subject to the conditions of his last will and testament. (2nd.) That appellee should be paid the income, during her life, from the property of said trusts, and the property in said estate, except that the amount of $22,000.00, mentioned in the post-nuptial agreement, should be deducted and that the proceeds of the sale of said real estate to the Berry's and to Frank J. Farra ($41,000.00), should be deducted. (3rd.) The income from said amounts of $41,000.00 and $22,000.00, should be applied by said bank as trustee, pursuant to said trust agreements.

Appellants filed a motion for new trial containing twenty-two alleged grounds, which was overruled. Judgment was rendered ordering said bank as trustee to pay appellee 68.2 per cent of the income from said trust, during her lifetime, and balance of said income from said trusts to devolve as is provided in said trust agreements, and further ordering the administrator to pay all the income from the property inventoried by him as aforesaid, to appellee during her lifetime, and said property otherwise to devolve as is provided in item four of decedent's last will.

Thereupon appellants perfected this appeal. The errors relied upon for reversal which are discussed are: (1st.) error in overruling appellant's motion to make appellee's claim more specific as to each of the specifications numbered one (1), two (2), three (3), four (4), seven (7), eight (8), and nine (9); (2nd.) error in overruling appellant's demurrer to appellee's amended claim; (3rd.) the trial court erred in its first conclusion

of law; (4th.) the trial court erred in its second conclusion of law; (6th.) overruling appellant's motion for new trial; (7th.) the trial court did not have jurisdiction of the subject matter of this action; (8th.) the trial court did not have jurisdiction to try the issues involved in this case under the guise of a claim against the estate of said decedent; (9th.) the trial court erred in entering and rendering the judgment herein.

The grounds for new trial which are discussed are: (1st.) Finding is not sustained by sufficient evidence; (2nd.) "The finding (decision) of the court is contrary to law;" and other grounds based on admission and refusal to admit evidence over objections. As to the alleged errors based on the court's ruling on appellant's motion to make appellee's claim more specific, we deem it sufficient to note that the record does not show, and appellants do not contend, that said ruling was harmful, and therefore the judgment can not be reversed on that alleged error. *Haskell and Barker Car Co.* v. *Trzop* (1920), 190 Ind. 35, 128 N. E. 401; *Lake Co. Agr. Soc.* v. *Verplank* (1919), 71 Ind. App. 186, 124 N. E. 494.

Under the alleged error that the court erred in overruling the demurrer, appellants contend that the law does not contemplate post-nuptial settlements. The demurrer, however, did not contain a memorandum covering said contention, and therefore this court will not reverse the judgment, for that reason.

We deem it expedient to note that this court, in *Worth* v. *Patton, Admr.* (1892), 5 Ind. App. 272, 31 N. E. 1130, and in *Null, Trustee* v. *First National Bank* (1924), 81 Ind. App. 406, 143 N. E. 522, upheld post-nuptial contracts. The Supreme Court of this state did likewise in *Baldwin* v. *Heil* (1900), 155 Ind. 682, 58 N. E. 200.

We think a discussion of appellant's points under

their alleged error, that the court erred in its first conclusion of law, would not serve any useful purpose, and therefore we will not discuss them.

Under their alleged error, that the court erred in its second conclusion of law, appellant's contend there was no valid or adequate consideration for the post-nuptial contract.

We hold that decedent's agreement to transfer lots 25, and 26 in Zollars Park (the home property) to himself and appellee jointly, and appellee's release of her inchoate interest in the other pieces of real estate mentioned in the post-nuptial agreement, was sufficient and valid consideration from each of said parties. See *Worth* v. *Patton, Admr., supra; Null, Trustee* v. *First Natl. Bank, supra,* and *Baldwin* v. *Heil, supra.*

Appellants also contend that the court did not have jurisdiction to try and determine this cause as a claim against this estate. In *Carroll* v. *Swift et al.* (1894), 10 Ind. App. 170, 37 N. E. 1061, a widow filed a petition against the estate of her husband in which she alleged that subsequent to their marriage they entered into an agreement whereby, in consideration of her signing certain deeds and joining him in the conveyance of certain real estate, he would pay her $600.00 cash and allow her one-third of the personal property held by him at the time of death; that she fulfilled her part of the agreement, and that his children and heirs denied her any part or share of his estate, and she prayed for a one-third share in said estate. The court, through Lotz, C. J., said, "The claim made by appellant (widow) growing out of the conveyance of the real estate, is one that arises from the contract and act of the deceased, and *should be filed as a claim against the estate under Section 2465, R. S. 1894.*" The statute referred to was in force when appellee's petition herein was filed, and is in force today, and is section 3152,

Burns 1926. Said ruling of this court has not been reversed or changed by any later opinion.

Appellants contend that appellee, by acceptance of household goods and other personal property had elected to take under the will, that the will was in conflict with the post-nuptial agreement and therefore the court's conclusion that she take property by virtue of both instruments was erroneous.

The doctrine of election has no application in this case. Appellee's claim was based on a contract, and law permits her to recover on said contract as if it were a contract with someone who was not her husband. A recovery on said contract does not and should not prevent her from accepting additional benefits accruing to her by decedent's last will. See *Worth* v. *Patton, supra; Shaffer* v. *Matthews, Admr.* (1881), 77 Ind. 83.

There might be some doubt as to whether or not appellee's claim must be construed as an action seeking specific performance of the contract, but there can be no reasonable doubt that the court below so construed it; nor that the court's decree was in effect one of specific performance. Therefore the question of whether or not the post-nuptial contract is sufficiently definite and certain to permit enforcement by specific performance is properly before us for determination.

We think the reasoning of Gillett, J., in *Burke* v. *Meade* (1902), 159 Ind. 252, 64 N. E. 880, on a similar question is so convincing and appropriate to the question now being considered by this court that we quote at length from said opinion as follows:

"Courts of equity do, however, strenuously require, as a prerequisite to a decree of specific performance, that, . . . its provisions shall be clear and specific in all of their essential elements. Mr. Justice Story, in his work on Equity Jurisp. (13th

Ed.), at Sec. 764, after stating that in former times able judges felt themselves at liberty to frame a contract for the parties, ex aequo et bono, where it found none, says: 'Such latitude of jurisdiction seems unwarrantable upon any sound principle, and accordingly it has been expressly renounced in more recent times.' [Citing authorities.] The reason for the requirement of certainty is thus pointed out by a well known writer on specific performance: 'To sustain the latter proceeding (an action for damages), the proposition required is the negative one, that the defendant has not performed the contract—a conclusion which may often be arrived at without any exact consideration of the terms of the contract; while in proceedings for specific performance it must appear not only that the contract had not been performed, but what is the contract which is to be performed.' "

The court further quoted *Colson* v. *Thompson* (1817), 2 Wheat. 336, 340, 4 L. Ed. 253: "The contract which is sought to be specifically executed, ought not only to be proved, but the terms of it should be so precise as that neither party could reasonably misunderstand them. If the contract be vague or uncertain, or the evidence to establish it be insufficient, a court of equity will not exercise its extraordinary jurisdiction to enforce it, but will leave the party to his legal remedy."

The same line of reasoning is followed in *Harter* v. *Morris* (1919), 72 Ind. App. 189, 123 N. E. 23; and *Smith* v. *Toth* (1915), 61 Ind. App. 42, 111 N. E. 442.

In *Harter* v. *Morris, supra,* the court says that a contract entitled to enforcement by specific performance, "must be capable of being performed without adding anything to its terms and nothing must be left to the future."

In the Restatement of the Law of Contracts by the American Law Institute (May 6, 1932), at page 673, we find this statement, "Specific enforcement will not be decreed unless the terms of the contract are so expressed

that the court can determine with reasonable certainty what is the duty of each party and the conditions under which performance is due."

The court below apparently construed the contract to prohibit the creation of a trust with the $22,000.00 and the proceeds of said sale of real estate, as was done by decedent, and construed the contract to mean that the $22,000.00 was not to be deducted until at decedent's death. We do not think the contract is subject to such construction without adding to it, a clause which would prevent decedent from disposing of the $22,000.00 during his life time; and therefore, on authority of *Harter* v. *Morris, supra,* we can not affirm the judgment below.

We think the finding of facts shows that the post-nuptial contract was performed by the parties. The contract, *by its terms* released all rights that appellee had in the $22,000.00. The contract required neither of the parties to *do* or *perform* anything except to join in the conveyance of the real estate. That was done, hence the decree of specific performance was contrary to law, and the judgment should be reversed.

The record does not show that any property in excess of $63,000.00 went into the trust funds. Appellee specifically released decedent's property of the value of $22,000.00 by executing the post-nuptial contract. She released additional property of decedent of the value of $41,000.00 when she executed the post-nuptial agreement and joined in the conveyance of said two pieces of real estate to third parties. She had no cause for complaint if decedent put into said trusts, only the property which she released.

Appellee contends that the trust agreements are invalid because they were in breach of the post-nuptial

agreement, and are therefore, in equity, constructively fraudulent. That is to say, that, if the trusts were recognized as valid, a fraud would be perpetrated upon her. We do not agree with said contention. Recognition of the trusts as being valid does not take any rights from appellee, because the record does not show that she had any right in the trust property.

Decedent did not promise to keep the $22,000.00 and the proceeds of the real estate in his estate until his death, nor did he promise to make any particular disposition of his property at death. The postnuptial contract, aside from the provisions as to the transfer of real estate and the exemption of $22,-000.00 was, in effect, merely *an agreement on the part of* appellee to accept a life estate in all the personal property owned by decedent at the time of his death in lieu of any interest that might vest in her due to the statute of descent; or, in effect, merely a *release* of all *claim* to decedent's property except a life estate in his personal property.

We must determine, however, whether or not the property in the trusts was decedent's property at the time of his death. If the trust property was still decedent's property at the time of his death, she was entitled to a life estate in it. If the trust property was not his property at the time of his death, she had no claim to it.

Appellant contends the trusts were valid in all respects. Appellee contends they "are perfectly valid if they were not in breach of the (post-nuptial) agreement." We have discussed the single reservation of appellee as to the validity of the trust agreements, and are holding in this opinion that the trust agreements are not in breach of the post-nuptial agreement. We therefore hold that the property in the trust was *not* property of the decedent at the time of his death, and

hence that appellee acquired no claim in the trust property by virtue of the post-nuptial agreement.

The judgment is reversed, and the lower court is ordered to restate its conclusions of law and render judgment in accordance with this opinion.