GIBRALTAR REALTY COMPANY *v.* SECURITY TRUST
COMPANY.

[No. 23,687. Filed October 12, 1922. Rehearing denied November 23, 1922.]

1. JUDGMENT.— *Complaint.— Proof.— Variance.— Recovery.—* In an action against a corporation for damages in which plaintiff predicated its cause of action upon an allegation that defendant had issued to its secretary a stock certificate, of which he was the owner, and that the secretary assigned it as collateral security for the renewal of a note evidencing a personal debt, and that such stock was worth an amount named, plaintiff was not entitled to recover upon a special finding that neither it nor its assignor owned the shares and that defendant did not issue the stock certificate nor authorize it to be issued, but that it was obtained by the secretary's fraud and deceit, and that when he hypothecated the certificate with plaintiff he was not acting within the scope of his agency as secretary, but solely in his private capacity, and which failed to find that the shares of stock had any value. p. 506.

2. JUDGMENT. — *Complaint. — Proof. — Variance. —* A plaintiff must recover upon proof of the facts alleged in his complaint, and he will not be permitted to allege one state of facts, and then procure the court to find altogether different facts, and recover judgment for a cause of action not within the issues joined in the pleadings. p. 506.

3. JUDGMENT.—*Complaint.—Proof.—Variance.—*In an action for damages against a corporation grounded upon the allegation that it had issued to plaintiff's debtor, who was secretary of the corporation, an illegal stock certificate, after it had previously issued all the stock authorized under its charter, and that the debtor had delivered the certificate to plaintiff as collateral security for renewal of a note evidencing a personal loan, plaintiff was not entitled to recover under a finding that the certificate was surreptitiously issued by the debtor without authority, when not acting within the scope of his agency for defendant, and was negotiated to plaintiff when the secretary was engaged solely in the transaction of his own private business; and in the absence of a finding that the certificate had some value, a conclusion of law awarding damages was not warranted, since plaintiff could not have been damaged if the certificate was worthless. p. 512.

4. CORPORATION.—*Fraud of Officer.—Liability of Corporation.—* The mere fact that one chargeable with fraud in the issuance of a stock certificate was an officer of the corporation would not make it liable for false representations made by him in

his own behalf, when transacting his own business and not that of the corporation.  p. 513.

5.  JUDGMENT.— *Estoppel.— Failure to Plead.*— Where a complaint failed to allege facts constituting an estoppel, a judgment on that ground cannot be upheld, regardless of whether a cause of action based on an estoppel could have been maintained if it had been pleaded.  p. 514.

6.  CORPORATIONS.—*Stock Certificates.—Negotiability.—Statutes.*—Under §9089a Burns 1914, Acts 1913 p. 120, énumerating the requisites of a negotiable instrument, a stock certificate is not negotiable by the law merchant so as to vest good title in an assignee for value, without notice, by virtue of such an assignment, where the assignor has no title.  p. 514.

From Marion Superior Court; *W. W. Thornton,* Judge.

Action by the Security Trust Company against the Gibraltar Realty Company.  From a judgment for plaintiff, the defendant appeals.  *Reversed.*

*Charles Martindale,* for appellant.
*Ward H. Watson* and *Sol H. Esarey,* for appellee.
*Herod & Schortemeier, Amici Curiae.*

EWBANK, J.—This was an action by appellee against appellant to recover damages because of the fact, as alleged in the pleadings and found by the court, that the secretary of appellant corporation fraudulently issued to himself a certificate for 100 shares of stock in that corporation after all the authorized stock had been issued and sold to others, and deposited such fraudulent certificate with appellee as collateral security for a note of himself and his partner, given in renewal of a prior note, and then failed to pay the debt evidenced by such note.  The court made a special finding of facts and stated a conclusion of law thereon in favor of appellee, to which appellant excepted.  A judgment in conformity with such conclusion was rendered in favor of appellee for $8,668 and costs.  Appellant has assigned as error that the trial court erred in its conclusion of law upon the facts found.

The complaint was in three paragraphs. Each paragraph alleged that William F. Wocher and another were indebted to appellee, and that upon renewing a note given by them to it for such indebtedness he assigned to appellee, as collateral security for the debt, the shares of stock and certificate in question; that the note then given was renewed, in part, by a note for $6,000, with interest and attorney fees; that said note was due and unpaid, and that the makers were insolvent. Each of the first and second paragraphs also alleged, in substance: (a) That the appellant corporation "executed and delivered to William F. Wocher" the said certificate, and that said Wocher, for a valuable consideration, by indorsement and delivery, assigned to appellee the shares of stock thereby evidenced; (b) the first paragraph further alleged that "at the time of said endorsement and delivery said Wocher was the owner and holder of said shares of stock;" and (c) the second alleged that he "owned and had in his possession" the said stock, which "was duly issued to him by the said" appellant. Each of these paragraphs alleged (d) that appellee (the plaintiff) thereby became, and at the time of bringing this suit was, "the owner of said shares of stock and the certificate therefor," and was entitled to have such shares transferred to it on the books of appellant company; (e) that the shares were then and at all times of the value of $10,000, and that appellee had been damaged in the sum of $9,000. The prayer for relief in each of these paragraphs was that appellant be required to execute and deliver to appellee a certificate for said shares of stock upon surrender of the old certificate, or to pay damages if this were not done. Neither the first nor the second paragraph charged that Wocher or any other officer of the appellant corporation was guilty of any wrongful act in issuing the shares, or that appellant was guilty of negligence, or had done or failed to

do anything by which it was estopped to deny liability in case the alleged stock certificate was not lawfully issued; but each counted wholly upon the alleged fact the certificate was lawfully issued, that Wocher had owned the shares when he assigned them to appellee, and that appellee thereby became and was the owner.

The court found specially that (a) before the certificate in question was executed all of the stock which the charter of appellant corporation empowered it to issue had been issued and sold, and was owned by individuals other than said Wocher, that without the knowledge or consent of any other officer or director of appellant corporation Wocher took a blank certificate from its stock book, filled it out in his own favor for 100 shares of the preferred stock, signed it as secretary, procured the president to sign it by falsely stating that it was in renewal of two certificates previously issued to him (which the court finds he had theretofore sold and assigned), and delivered the certificate thus obtained to appellee as collateral security for a note then executed in renewal of other notes given for a debt which he and his partner had previously owed for nearly seven years; (b) that said Wocher did not then nor thereafter own any stock whatever in the appellant corporation; (c) that when said Wocher took the blank certificate, filled it out, signed it as secretary, and procured the president to sign it, and when he hypothecated it with appellee as collateral security, he was not acting within the scope of his agency as secretary-treasurer of appellant company, but as an individual in the private business of himself and his partner; and (d) there was no finding that the stock certificate in question, nor genuine shares of preferred stock (even if it were valid) had any value whatever, nor did the court find anything as to the property, earnings or indebtedness of appellant corporation.

These findings clearly establish that appellee is not

entitled to recover on the alleged cause of action stated in its first and second paragraphs of complaint.

1. Having grounded its right of action, as alleged in those paragraphs, upon the alleged facts that Wocher owned the shares, that appellant issued to him a stock certificate for such shares which he assigned to appellee, that appellee thereby became the owner, and that the shares were of value, appellee cannot recover upon a special finding that neither it nor its assignor owned the shares and that appellant did not issue the stock certificate nor authorize it to be issued, but that it was obtained by fraud and deceit, and which failed to find that the shares had any value.

A plaintiff must recover upon proof of the facts alleged, or he cannot recover at all. It will not do to allege one state of facts and then procure the court 2. to find altogether different facts, and render judgment for a cause of action not within the issues joined on the pleadings. *Cleveland, etc., R. Co.* v. *Wynant* (1885), 100 Ind. 160, 166; *City of Union City* v. *Murphy* (1911), 176 Ind. 597, 599, 96 N. E. 584.

Since the court found against appellee upon the material allegations of its first and second paragraphs of complaint, they need not be further considered.

The remaining question is whether the facts alleged in the third paragraph of the complaint, or enough of them to make out a cause of action for the recovery of the damages awarded, were found by the trial court. In addition to alleging the execution of the renewal note for $6,000, with interest and attorney fees, the assignment of the stock certificate as collateral security for payment of the note, that the shares of stock were worth $10,000, that the debt was due and unpaid and the makers of the note were insolvent, that appellant had been requested to assign the shares on its books and issue to appellee a new certificate for them, but refused

to do so, and setting out a copy of the alleged note, the third paragraph also alleged as follows: that appellant was a corporation with its home office at Indianapolis; that previously it had duly issued its preferred stock in the amount of $50,000, in accordance with its articles of association, and that the stock pledged to appellee by William F. Wocher as security "does not constitute a part thereof, but was issued by said defendant (appellant) * * * after it had issued the said $50,000 of preferred stock as authorized by said defendant, and said shares constitute an overissue of $10,000 of said preferred stock;" that the blank form on which such certificate was written contained blanks in which to write an assignment, upon which said Wocher executed an assignment to appellee, and delivered the same to appellee at the time the note was executed; that at said time Wocher asserted and represented that he was the legal owner of said shares, and that they were duly issued and valid, and plaintiff (appellee) believed, and relied on such representations and had no knowledge or means of knowledge that they were false. But said third paragraph did not allege that William F. Wocher was an officer, director or agent of the appellant corporation, or that he made said representations on behalf of appellant, or that appellant was in any way a party to them, or that appellant was guilty of negligence in the matter of giving Wocher access to its records or of the stock certificate in question being issued; it only charged that the stock pledged by him as security, to which such representations had reference, "was issued by said defendant" after it had previously issued all that was authorized by law. The certificate of stock in question was set out, and contained a recital that William F. Wocher was the owner of 100 shares of stock in the appellant corporation, that the holder thereof would be entitled to receive and appellant would pay cumula-

tive semiannual dividends thereon, and would redeem the shares at par, plus any arrearages of dividends, in the event of liquidation of the corporation assets, and would redeem the shares at that rate not later than May 1, 1932.

The 'first paragraph of the answer was a general denial. The second paragraph alleged, in substance, that appellant was a corporation organized under the laws of Indiana for the purpose of buying, holding and selling real estate, with a capital stock of $150,000, of which $50,000 was preferred stock, divided into 500 shares of the par value of $100 each; that at the time the stock certificate in question was signed by the officers of appellant company, and was assigned to appellee as collateral, and at the time the renewal note sued on was executed by Wocher and his partner, said William F. Wocher was secretary and treasurer of appellant, and the directors were three other men, including the president, whose name, as president, was signed to said stock certificate; that long prior to that time all of the shares of the common and preferred stock had been sold and issued, and none of them were owned by appellant or by said Wocher; that Wocher and his partner for nearly seven years had been indebted to appellee, and the appellee was pressing them for additional security; that as treasurer said Wocher had possession of appellant's stock certificate book and corporate seal; that without the knowledge of appellant or of any officer or director of said corporation, said Wocher took from the stock certificate book Certificate Number 20, filled in the blanks with his own name and for 100 shares, impressed the seal of appellant corporation upon it, signed it as treasurer of said company, and delivered it to appellee as security for his antecedent debt; that appellee knew it was dealing with said Wocher solely in respect to his own private indebtedness, and not in respect to any

business of appellant, but made no inquiry whether Wocher owned the shares of stock, or whether the certificate delivered to it was genuine, and gave no notice to appellant that it had such certificate, and appellant did not know that said certificate existed until nearly two years later; that inquiry at the office of appellant of any officer or director except Wocher would have disclosed that said stock certificate was fictitious, false and fraudulent, and would have resulted in its repudiation by appellant, and that appellee was guilty of laches in waiting more than two years before it informed appellant that it held such certificate. The reply was a denial.

By its special finding, including what has been heretofore set out, the court found most of the facts alleged in the third paragraph of complaint, except that it did not find the value of the stock certificate nor of any shares of stock, nor that either had any value at all, and did not find that appellant issued the stock certificate in question, but found, on the contrary, that it was surreptitiously issued by William F. Wocher, for his own purposes, and used in his own private business, after he had taken the blank from the stock certificate book without the knowledge or consent of any officer or director of appellant corporation other than himself, filled out the blanks in favor of himself, and induced the president, by false statements, to sign it, and that in so doing, and in hypothecating it, he was not acting within the scope of his agency as secretary-treasurer of the appellant company, but when he so hypothecated it was acting as an individual in respect to the private business of himself and his partner; and it did not find that appellee had no "means of knowledge" that Wocher's representations concerning the certificate of stock and his ownership of the shares it purported to represent, were false, nor find that it could not have learned

the certificate was fraudulent by asking other officers of the corporation.

Of the facts alleged in the answer the court further found that Wocher was secretary-treasurer and a director of the appellant corporation; that the man who signed the stock certificate in question as president of the appellant was its president; that the two and another were its directors; that Wocher had formerly owned 100 shares of stock therein, represented by two certificates for 50 shares each, but had sold and assigned them, though they had not been transferred on the books of the corporation, and that Wocher procured the signature of the president by falsely stating that he had surrendered those two certificates for cancellation, and was taking out the certificate for 100 shares which the president signed, in exchange for those two certificates; that the debt to appellee, in treble the amount of the note sued on, had been incurred by Wocher and his partner, in 1908, of which all but $9,000 had been repaid before the execution of the renewal note which the assignment of said unauthorized certificate was made to secure; that at the time the certificate was so issued by Wocher to himself and assigned to appellee, the appellee had requested Wocher and his partner to give it additional collateral; that at the time said renewal note for $9,000 was given and said false certificate was assigned to appellee "it was common rumor in the city of Indianapolis that John Wocher & Bro. (said Wocher and his partner) were very much embarrassed and in failing circumstances;" that appellee and Wocher were transacting their separate business, which long antedated the organization of appellant corporation, when the assignment was made, and appellee "knew they were dealing with William F. Wocher in respect to his own private business and * * * a then-existing indebtedness of John Wocher and Bro. to said (appellee) and made no

investigation as to the genuineness of said preferred stock certificate or the ownership of William F. Wocher of shares of preferred stock of (appellant)," and from then until nine months later, when appellee took the renewal note sued on, "with said certificate No. 20, as collateral security, and thereafter, it made no further investigation in regard to said collateral;" that when the president of appellant company was first informed, a year later, that appellee held such certificate, he immediately told the officers of appellee that it was spurious, and in the name of appellant wrote appellee a letter asserting that he had so stated that said certificate was "spurious and in effect stolen from the stock certificate book by Mr. Wocher and converted to his own use;" that at the time demand was made for the transfer of such shares to appellee and the issue of a stock certificate in its name appellant did not own any shares of such stock, but all of its shares had been issued and sold, and were owned by persons other than appellee.

It thus appears that, of the facts stated in the third paragraph of complaint as constituting appellee's alleged cause of action, it failed to establish: (a) That the appellant corporation issued the stock certificate which appellee held as collateral; or (b) that such certificate, or the shares of preferred stock in appellant corporation which it purported to represent, were of a value equal to the debt for which they were assigned as collateral security, or had any value at all—while appellant established, of the facts pleaded in its answer; (c) that it had no power, as a corporation, to issue the certificate of stock in question; (d) that the same was wrongfully issued and negotiated without authority from appellant's board of directors, and assigned to appellee by the secretary-treasurer of appellant corporation, in the transaction of his individual business with appellee, in which appellant had no interest, as security

for the individual debt to appellee of himself and his partner, who were then reputed to be in failing circumstances; and (e) was thereafter held as collateral security for a note in renewal of said debt given when they were both actually insolvent; (f) that appellee knew it was the individual business of said secretary-treasurer in which he was negotiating the stock certificate, for a debt he had owed to it for many years; but (g) made no inquiry of appellant until long afterward; and (h) that as soon as inquiry was made appellant's president immediately informed appellee that the stock certificate was spurious, and that it was issued without authority.

The alleged cause of action stated in the third paragraph of complaint being grounded upon the alleged fact that the appellant corporation issued to 3. Wocher an illegal stock certificate after it had previously issued all the preferred stock which it had authority under its charter to issue, and that Wocher made use of it to obtain credit with the appellee, and no other facts being alleged which in any manner connected appellant with the stock certificate, a finding that it was not issued by appellant or by its authority, but was surreptitiously issued by Wocher without authority, when he was not acting within the scope of his agency for appellant, and was negotiated to appellee when he was engaged solely in the transaction of his own private business, established that appellee had no right to recover on that paragraph. This was a material allegation, without which no cause of action was stated. And unless the shares of stock for which the certificate purported to have been issued had some value, appellee could not have been damaged by appellant's refusal to do such acts as would perfect its title thereto. Only in case their value was as much as $8,668 could appellant be damaged in that amount by the total loss of

the shares, even if they had been valid and genuine, and duly issued.

For lack of a finding that "said shares at the time of said assignment and at all times since have been of the value of $10,000" (or at least a sum equal to the damages awarded) appellants' exception to the conclusion of law that appellee was entitled to recover from appellant the sum of $8,668 was well taken, and should have been sustained. Value in that amount not being shown, appellee was not entitled to recover the sum awarded.

Some other matters discussed by counsel will be briefly noticed. As was stated above, the third paragraph of complaint counted upon the direct averment that the stock pledged to it by Wocher "was 4. issued by said defendant Gibraltar Realty Company after it had issued" all the stock authorized by its charter. No facts were alleged showing or tending to show that appellant was estopped to deny that fact if it were not true. That paragraph did not allege that Wocher was secretary-treasurer of the appellant corporation, nor that he had any authority as an officer or agent of appellant. And, even if it had, the mere fact that he was such an officer would not make appellant liable for false representations made by him on his own behalf, when transacting his own business, and not engaged in any business of the appellant.

And whatever effect the alleged false representations by Wocher might have to estop Wocher from denying that he was the owner of 100 shares of preferred stock, evidenced by the certificate in question, they could not estop appellant unless Wocher acted as its authorized agent in making them. The express finding that he did not, but that when he abstracted the certificate from appellant's preferred stock certificate book and filled in

the blanks, signed it and procured the signature of the president thereon, and when he hypothecated it, he was not acting within the scope of his agency as an officer of appellant, but in his dealing with appellee was acting as an individual in the private business of himself and his partner, negatives any estoppel on the part of appellant which might arise from the fact that appellant issued the spurious stock certificate, even if that fact should have been established by the finding, which it was not.

The elements of an estoppel *in pais* against appellant, as defined by numerous authorities, were not alleged in the third paragraph of complaint, nor found by 5. the court. *Taylor* v. *Griner* (1914), 55 Ind. App. 617, 622, 104 N. E. 607; *Steele* v. *Michigan Buggy Co.* (1911), 50 Ind. App. 635, 642, 95 N. E. 435; *Pierce* v. *Vansell* (1905), 35 Ind. App. 525, 533, 74 N. E. 554; *Hosford* v. *Johnson* (1881), 74 Ind. 479, 485, 486. And, having failed to allege facts constituting an estoppel, appellee cannot uphold this judgment on the ground of an estoppel which was not pleaded, whether a cause of action on that ground could or could not have been maintained if it had been pleaded.

The complaint having failed to charge negligence on the part of appellant in employing Wocher as secretary, or in permitting him to obtain the blank stock certificate, affix the seal to it, and issue it to himself, we do not consider nor decide the questions argued by counsel as to whether or not a corporation might incur liability by its negligence in such matters.

A stock certificate is not negotiable by the law merchant so as to vest a good title in an assignee for value, without notice, by virtue of such an assignment, 6. where the assignor had no title. §9089a Burns 1914, Acts 1913 p. 120, §1; 3 R. C. L. pp. 850, 851, §28; 7 R. C. L. pp. 213, 214, §184.

Counsel have discussed at length the question whether or not one who takes as security for the private debt of an officer of a corporation stocks which are signed by such officer, and purport to have been issued by him to himself, is charged with the duty to investigate the authority of such officer to issue them; but the conclusion which we have reached makes it unnecessary to decide that question, and we have not considered it.

The special finding of facts found against the plaintiff (appellee) on some of the material allegations of each paragraph of its complaint, which it was bound to establish in order to recover.

The court is of the opinion that justice requires a retrial of this case. The judgment is reversed, with directions to grant a new trial.