### MODERN WOODMEN OF AMERICA *v.* ARNKENS.

[No. 14,899.   Filed November 15, 1934.]

*Gemmill, Brown & Campbell, George G. Perrin,* and *Kemp, Kemp & Russell,* for appellant.

*Cleon Wade Mount* and *Pence, O'Neill & Diven,* for appellee.

SMITH, P. J.—This is an appeal from a judgment recovered by appellee against appellant for legal services alleged to have been rendered to appellant. The complaint is in one paragraph and alleges in substance that appellee is an attorney at law, and was engaged in the practice of law in the city of Anderson, Indiana, during the year 1930, and for many years prior thereto; that appellee is entitled to practice law in Indiana, and was duly admitted to such practice in the year 1921; that appellant is a fraternal beneficiary society, incorporated under the laws of Illinois, and maintains a local camp of the society in the city of Anderson, Indiana; that appellant is indebted to appellee in the sum of $2500.00 for legal services rendered by him for appellant at its special instance and request, an itemized statement of which account for services is filed therewith and made a part thereof; that said sum is long past due and unpaid. Prayer for $2800.00 including interest follows. The itemized statement referred to is as follows:

"To services rendered as per agreement with J. G. Ray on February 13, 1930 in Evelyn Hudson, et al, fraud, embezzlement and conspiracy cases, $2500.00."

To this complaint appellant filed answer in general denial, which closed the issues. The cause was submitted to the court for trial without a jury, and a general finding made for the appellee, and judgment rendered in his favor for $2500 and costs.

Appellant seasonably filed its motion for a new trial alleging as grounds therefor, (1) the decision of the court is not sustained by sufficient evidence; (2) the decision of the court is contrary to law. While there

are several other grounds alleged in the motion for a new trial, they raise the same questions as presented by the two above set out. The lower court overruled the appellant's motion for a new trial, to which it excepted, this action being the only error assigned for reversal.

The appellee challenges the sufficiency of appellant's brief in that it does not comply with rule 22 of this court, and says that the points and authorities in appellant's briefs are mere abstract propositions of law, and not directed or applied to any specific assignment of error, and hence cannot be considered on appeal. There is only one assignment of error, and that is the overruling of the motion for a new trial. Appellant, under its points and authorities, sets out this error and relates points and authorities thereto. We think there has been a good faith effort to comply with the rule and will consider the appeal upon its merits.

From the conclusion we have reached we deem it proper to set out a brief summary of the facts as shown by the evidence most favorable to appellee. The only material witness as to the facts in this case on behalf of appellee was the appellee himself. The rest of the testimony consists mainly of letters between the parties. Appellee testified that he is a practicing lawyer in the city of Anderson, Indiana, and in February, 1930, went to the office of the appellant at Rock Island, Illinois, and first advised the secretary of appellant that he was in possession of certain facts which showed that appellant had been defrauded out of some money by reason of a fraudulent death claim for insurance. He gave an assumed name, and said he was from Des Moines, Iowa, and told them that they had paid a death claim for life insurance upon a woman who was dead when the policy of insurance was written, and that he thought this information was of value and

offered to give the details thereof to the appellant for $5000. The general counsel and two of the directors were called in, and the offer was refused. Appellee further testified that he told the secretary that he had a better proposition and would take $3000 and two-thirds of any amount he might recover for appellant; that, thereupon, the general counsel was called back into the room, and this proposition was stated to him and he replied that he would not make any agreement with appellee; that he would only employ him on the same basis that they employed their other attorneys, for work done; that, thereupon, appellee told them that this was not satisfactory. Just before he started to leave the office, appellee testified that Mr. Ray, who is head clerk, and whose duties are that of secretary to the appellant, said to appellee in substance: "I am interested in what you have said and related. You go back and sleep over this. Go back and write Mr. Perrin (the general counsel) a letter, and I assure you that he will do what is fair," to which the appellee replied, "Mr. Ray, I do not want to make any agreement of that kind. At least you could agree to pay a reasonable fee for my services. You have the authority, don't you?" Mr. Ray replied that he had. Appellee further testified that Mr. Ray said: "Well, I'll tell you what you do . . . you go back and write Mr. Perrin a letter, telling him what you know, and if we find upon investigation that the representations of your letter are true, I will see that you get a reasonable fee." The above quotations are taken from the evidence as abstracted in appellant's briefs, and from a comparison with the record are substantially correct. The appellee then testified that he went home and the next day, on his own stationery, wrote Mr. Perrin, the general counsel, a letter under date of February 15, 1930, which letter was introduced in evidence, and is in the record. Parts of the letter

pertaining to the facts which are pertinent to this inquiry are:

"Of course, you appreciate at once what criminal acts have been committed by these men, and I feel reasonably sure that I can obtain a return of this money for you upon our reaching an agreement as to my fees. . . .

"Under the facts and the circumstances I still feel that upon a contingent basis I should receive sixty-six per cent (66%) of any amounts recovered from the parties involved, and if nothing is obtained from them I am to receive nothing for my services. This arrangement will put the payment of my services on a basis of merit, namely, the more I recover the more we will both receive. I much prefer this method as it appears to be the most fair and equitable to both of us, *altho I well realize that I will be obliged to accept any offer you may care to make in lieu thereof.*

"In anticipation of our reaching an agreement I want to suggest that you do nothing to acquaint the parties involved with the fact that you know what has happened. . . .

"Futhermore, *as soon as the matter of my employment has been agreed upon* I wish to obtain a signed statement from Hudson which will positively expose the entire matter in detail. I feel that he is the weakest of the three and will wilt fast." (Our italics).

On February 18, 1930, appellee received a letter from appellant written by Mr. Perrin, general counsel, in reply to his letter of February 15, aforesaid, that part bearing upon this question being as follows:

"Any fees that you are to receive are to be based upon actual work done, and are to be fixed by me. That means, that fees for investigation would be determined by me after a conference with our inspector, and fees for any litigation commenced by us would be fixed by me, after a conference with the Northern Indiana lawyer I have in mind. I do not care to have your fees on a percentage basis or a retainer basis, and I wish them to be based upon work to be done by you and not on account of the fact that you are possessed of the information men-

tioned in your letter. I can only say that I will endeavor to be reasonable about fees. I think your ideas of the fees you should receive are entirely erroneous and out of proportion, and we could not consider paying them at all."

In reply to this letter of February 18th containing the above quotations, the appellee addressed a letter to Mr. Perrin, dated February 21, 1930, in which he said in part:

"Accordingly, if I am to take any further part in this matter I am willing to work upon your instructions, but not under the instructions of Mr. Brown or this inspector. I also am to·determine what my services are reasonably worth· to you, and that .right I reserve absolutely. I do not attempt to put the price on another man's product and I reserve to myself the same privilege. I have never charged excessive fees and I will not begin now."

Thereafter, on March 3, 1930, appellee received a letter from appellant, written by Mr. Perrin, that part bearing upon this question being as follows:

"My letter to you·of February 18th stated that if any litigation was to be commenced, same would be under the supervision of a northern Indiana attorney and the investigation would be under the supervision of our Inspector and the attorney. From your letter, I take it that they have not had you perform any services for them, and if such is the case, then Modern Woodmen of America owes you nothing.

"You were not asked to come here, and you have performed no services that I know anything about entitling you to compensation."

Thereafter, appellee wrote to Mr. Perrin, general counsel for appellant, advising him that he was filing suit to enforce payment of his attorney's fees. He further testified that the value of his service to date was $2500. On cross-examination appellee said: "I never divulged any information except by the letters. This is the information for which I am asking this fee."

The theory of appellee's complaint is for legal services rendered by him at the special instance and request of appellant. He attaches what he terms an itemized statement to his complaint which is heretofore set out, in which he says: "To services rendered as per agreement with J. G. Ray on February 13, 1930."

From the correspondence that passed between the parties it is shown there was no agreement for employment, nor did the minds of the parties meet in reference thereto. At no time was the question of employment or the amount for the services ever agreed upon. In fact it was constantly disputed, as shown by the correspondence. Neither the appellant nor the appellee came to any common understanding, as shown by the letters, as to employment or the amount of compensation. It has been held by this court and the Supreme Court of this state that where an offer is made, the acceptance must meet and correspond with the offer in every respect, neither falling within, nor going beyond the terms proposed, but exactly meeting them at all points and closing with them just as they stand. *Avery* v. *Citizens Loan & Trust Company, Administrator* (1931), 94 Ind. App. 161, 180 N. E. 23, and cases there cited; *World Tire Corporation* v. *Gibson Company* (1922), 78 Ind. App. 435, 438, 135 N. E. 805. Appellee also urges his right to recover upon the agreement he made with Mr. Ray which consisted of statements made in the conversation he had with Mr. Ray upon his first visit to the appellee's office at Rock Island.

We have set out in this opinion the substance of that so-called agreement as stated by appellee in his testimony. It will be observed that there was no completed agreement made by Mr. Ray, even if he had the authority to bind the appellant thereto, and there is no such contract of employment upon which appellee could recover. Neither does it

come within the issues as set forth in the complaint, which is for legal services rendered for the appellant at its special instance and request, nor were there any legal services ever rendered thereafter. If appellee is entitled to recover at all, he must recover upon the theory of his complaint. The only thing for which appellee could possibly claim compensation for any services was that he imparted to appellant certain information that they had been defrauded and gave them the details thereof. As far as appellee was concerned that was the end of any connection he had with the appellant. So, if he recovers at all, he must recover upon the theory of his complaint for legal services rendered at the request of appellant, and not upon any other theory. *Gibraltar Realty Company* v. *Security Trust Company* (1922), 192 Ind. 502-506, 136 N. E. 636. However, we know of no rule of law that will entitle a lawyer to recover fees because he was not employed, or for legal services which he did not render. The only services as shown by the record, if it can be called services, that were actually rendered, were the imparting to appellant of information which appellee had received prior to any contacts with appellant, and which involved the commission of a crime, and this cannot be said to be legal services for which one might recover compensation. This information could have been obtained by any layman, and imparted the same as was done by appellee. There is no effort to recover upon any agreement to pay for this information. In fact, the record shows that the appellant refused to pay appellee for this information. Whether such an agreement could be made and an action maintained to recover thereon is not necessary for us to decide.

The evidence fails to show any contract of employment between the parties, or that any legal services were performed for appellant at its special instance and

request such as alleged in the complaint. The decision of the court is not sustained by sufficient evidence and is contrary to law. We can see no good purpose in ordering a retrial of this cause, for undoubtedly the evidence on a retrial would be substantially the same as presented herein. The judgment of the lower court is reversed with directions to enter a finding and judgment for appellant.