## FOLTZ ET AL. *v.* EVANS.

[No. 17,074.   Filed June 22, 1943.  .Rehearing denied July 16, 1943.]

James K. Northam and *Kivett, Chambers & Kivett,* all of Indianapolis, for appellants.

*Arthur L. Gilliom, Elbert R. Gilliom,* and *Karl J. Stipher,* all of Indianapolis, for appellee.

DRAPER, J.—This is an action for specific performance brought by appellee against the appellants to compel the conveyance of certain real estate in Indianapolis, described as 5022 Graceland Avenue, being Lot 61 in Wheeler's Illinois Heights Addition, pursuant to the terms of a contract for the purchase and sale thereof.

The complaint in two paragraphs was met by separate answers of special denial, a joint answer setting up the statute of frauds and a separate answer by appellant Foltz in the nature of a set-off. The court found that the appellee should take nothing as against Foltz and that Foltz should take nothing as against appellee and that the appellee was entitled to a decree of specific performance against the appellant Indiana Yards, Inc., and judgment was rendered accordingly. It will be unnecessary to further notice the pleadings filed or the judgment rendered in so far as Foltz is concerned. The appellant Indiana Yards, Inc., will be referred to as the appellant.

The first paragraph of complaint alleges that the appellant is the owner of the real estate in question

and that on October 28, 1941, a dwelling house was being erected thereon; that on that date the appellee entered into a written contract with the appellant, acting through its agent Foltz, to convey said premises to appellee in consideration of the sum of $7,300, of which $1,300 was to be paid in cash upon delivery of deed and the balance to be paid by the assumption of an existing mortgage of $6,000. That appellee paid $200 on account of the deposit of earnest money required by the contract and thereafter selected the chandeliers, decoration, hardware, double drain sink and wallpaper which were to be installed in said house, and obtained a preliminary acceptance of himself and wife as substitute mortgagors. That the appellee has duly performed all of the conditions of the contract on his part to be performed, is ready, able and willing to pay the purchase price, that he demanded performance on the part of the appellant which was refused and the appellee exhibits the alleged contract with his complaint. The second paragraph is like the first except that instead of alleging the exhibit to be the contract, it alleges it to be a memorandum of the contract made by the parties.

The error assigned is the overruling of appellant's motion for new trial, the unwaived specifications of which are that the decision of the court is not sustained by sufficient evidence and that it is contrary to law.

The evidence shows that appellee contacted one Stoner, a broker, and on Monday, October 27, 1941, signed and delivered to Stoner a proposition to purchase the property. The following day he signed and delivered to Stoner another proposition to purchase the property, the principal difference between the two being that according to the second proposition the house must be "completed upstairs and two car garage according

to plans and specifications," this provision not having been included in the first proposition, and with the second proposition he delivered to Stoner his check for $100, it being understood and agreed that the first proposition, which had never been accepted, should be destroyed. On October 28, 1941, this second proposition was submitted to Foltz but was not acceptable as made and on the reverse side of it he endorsed the following:

"This offer accepted subject to the following conditions.

   1. That Herbert S. Evans and wife are accepted by the Prudential Life Ins. Co. as substitute mortgagor thereby releasing present mortgagor of any liability under the law.

   2. Allowance for lighting fixtures to be 40.00
Retail,

    "    " Wall paper & hanging to be 60.00

    "    " Finish Hardware to be 30.00

Richard G. Foltz."

He left the proposition so endorsed with Stoner and on the following day, October 29, 1941, Stoner returned it and the check for $100 to the appellee who took them and called and talked with Foltz at his office and while there received and accepted from Foltz the proposition with conditional acceptance endorsed thereon and signed by Foltz, together with a set of plans and specifications and he delivered to Foltz his check for the sum of $200. The evidence discloses that appellee later obtained from the mortgagee a letter to the effect that he would be an acceptable substitute mortgagor on the mortgage then on the premises, shows ability and willingness to perform on his part and his demand for performance on the part of the appellant. It

further shows that the appellee visited the premises almost daily during the progress of construction, had many conferences with Foltz concerning the construction of the house, the installation and cost of "extras" and other things pertaining to the house, selected paint, wallpaper, fixtures and many other items which went into the house and in all things acted and was treated as the future occupant thereof until January and February of 1942, when it appeared that appellant did not intend to perform.

The first paper signed by appellee which was supposed to have been destroyed, later turned up in appellant's hands with appellee's signature of acceptance of a counter-offer of appellant endorsed thereon. It is not clear how this paper was acquired by the appellant nor the circumstances under which appellee's acceptance was written thereon, but in our opinion this paper deserves no further notice, as the trial court in effect found that it was not a valid proposition, and that it neither constituted nor evidenced the agreement of the parties, and such finding is sustained by substantial evidence.

It is not contended that Foltz did not have authority to act on behalf of the appellant, but it is contended that no valid contract was ever entered into between the appellant and the appellee. It is evident that the conditional acceptance of appellee's offer, endorsed and signed by the appellant on the reverse side thereof, did not constitute a contract, for to do so it would have been necessary for the acceptance to "meet and correspond with the offer in every respect, neither falling within nor going beyond the terms proposed, but exactly meeting them at all points and closing with them just as they stand." *World Tire Corporation* v. *Gibson Company* (1922), 78 Ind. App. 435, 135 N. E.

805. See also *Modern Woodmen of America* v. *Arnkens* (1934), 99 Ind. App. 344, 192 N. E. 706.

The appellant contends that by the express terms of the offer the entire contract was to be in writing, including the acceptance of a counter-offer, but we find no such stipulation in it. It contained the following language: "This offer is void if not accepted in writing on or before 12:00 o'clock noon of the ——— day of ———, 19——," and we shall assume, although we do not decide, that the appellee by leaving this printed language in his proposition without filling in the blank spaces left for the insertion of dates, meant to require the acceptance of his proposition in writing within a reasonable time. The appellant did not accept appellee's proposition as made but endorsed thereon the language which has been set out above. This conditional or qualified acceptance amounted to a rejection of appellee's offer as made, *Kritz* v. *Moon* (1928), 88 Ind. App. 5, 163 N. E. 112, and the making of a counter-offer by the appellant which itself required acceptance by the original offerer in order to create a binding contract, Page on Contracts, 2nd Ed., Vol. I, § 184, and if the counter-offer must have been accepted in writing no contract resulted for it was not accepted by the appellee in writing. It is the general rule that a party making an offer may prescribe the mode in which an acceptance must be made and an acceptance made otherwise will not bind the offerer unless the offerer expressly or impliedly modifies his requirements in that respect or waives them. Page on Contracts, 2nd Ed., Vol. I, § 185 & § 186. In the case of *Todorovich* v. *Kinnickinnic Mut. Loan & Building Assn.* (1941), 238 Wis. 39, 298 N. W. 226, 135 A. L. R. 818, Annotated, at p. 821, it was held that by making a counter-offer the original offeree rejects the terms of the original

offer *in toto,* but we do not conceive this to be the true rule. We believe the better rule to be that the counter-offer includes all of the terms and conditions of the original offer not inconsistent with those of the counter-offer in so far as the terms and conditions of the agreement itself are concerned, for it seems to us that any other rule would render most counter-offers entirely nugatory, since few of them undertake by their own terms to cover the entire proposition. In other words, an offer to purchase on certain conditions, accepted subject to new conditions which are in turn accepted by the original offerer produces a contract the terms of which consist of the original offer as amended or changed by the counter-offer. This principle, while not announced, is recognized in many cases. *Atlantic Phosphate Co.* v. *Sullivan* (1891), 34 S. C. 301, 13 S. E. 539. We do not however believe that the requirements of the original offerer as to time or manner of acceptance should be carried forward and become a part of the counter-offer unless the intention that such should be the case is clearly expressed in or necessarily implied from the terms of the instrument itself. These requirements are usually personal to the one making the original offer and are made to suit his own convenience. In fact the time fixed for acceptance in the original offer may often have expired before the making of a counter-offer and the manner specified for its acceptance no longer be convenient, practical or even possible. The original proposition in question clearly states that *this offer* should be void if not accepted in writing but no counter-offer is invited and there is no suggestion that a counter-offer, if any, must in turn be accepted by the original offerer in writing, and we hold that it was not necessary for the counter-offeree to accept it in writing. In the A. L. R. note above mentioned (135

A. L. R. 818) cases are collected which deal with the manner of acceptance of counter-offers. In this case the appellee's offer recites that he delivered with it the sum of $200 as earnest money to apply upon the cash payment to be made by him, the same to be returned in the event of a refusal of his offer, but such was not the fact. After a discussion of the transaction and the plans, the signed offer and counter-offer, together with the plans and specifications, were handed to the appellee and the appellee delivered his check to the appellant for the sum of $200. Delivery to the appellant of the check which it later cashed, and the acceptance by the appellee of the written offer and counter-offer, together with the plans and specifications, were sufficient to show acceptance of the counter-offer by the appellee, to say nothing of his later conduct. The appellant could have demanded acceptance of its counter-offer in writing but did not. Indeed, had an acceptance in writing of its counter-offer been required by the appellant, its acceptance of the check and delivery of the instruments described under the circumstances detailed might well have amounted to a waiver of the requirement. Page on Contracts (2nd Ed.), Vol. I, § 186. It is therefore clear that a contract was made between the parties, and that the offer and counter-offer was a memorandum thereof signed by the appellant. Whether such contract is enforceable by the appellee will be later discussed.

In this case the proposition recited that the house was "to be completed upstairs and two car garage according to plans and specifications," and plans and specifications were introduced in evidence and by testimony identified as those referred to in the memorandum. These exhibits were not signed by the parties or any of them and the appellant con-

tends that they constituted a term of the contract not incorporated in the writing, which, to comply with the statute of frauds (Burns' 1933, § 33-101) must within itself or by reference to other writings contain all the elements of a valid contract, including an identification of both subject-matter and parties without resort to parol evidence. The case of *Block* v. *Sherman et al.* (1941), 109 Ind. App. 330, 34 N. E. (2d) 951, was one where an unsigned and undated memorandum had been given, as had a signed and dated receipt, and the question was whether the two could be considered together in order to make an enforceable contract within the statute of frauds. It was there recognized that the memorandum may consist of several writings if each is signed by the party to be charged and the writings indicate that they relate to the same transaction, and further that a memorandum may consist of several writings though one only is signed, if the signed writing is annexed to the other writings by the party to be charged, or the signed writing refers to the unsigned writing so as to make it a part of the instrument which refers to it. The case reviews several earlier cases on the subject to the effect that parol proof of the connection of papers is not admissible to establish a contract required by the statute of frauds to be in writing, but that the evidence of the relationship must be within the instruments themselves, and in the opinion it is said that "where we have a signed instrument and an unsigned one, the connection between the two instruments must appear by internal evidence derived from the signed instrument. This connection cannot be shown by parol evidence concerning the intentions or actions of the parties. The signed instrument must so clearly and definitely refer to the unsigned one that, by force of the reference, the unsigned one becomes

part of the signed instrument." In that case there was no reference to the unsigned memorandum in the signed receipt, and despite many circumstances which might indicate a connection between the two papers it was held that since it would be necessary to resort to parol testimony to show the connection between the two papers they could not be considered together to make an enforceable contract within the statute. In the case of *Graham* v. *Henderson Elevator Co.* (1916), 60 Ind. App. 697, 111 N. E. 332, it is said that the connection between signed and unsigned papers may not be shown by parol but must appear by internal evidence derived from the signed memorandum, although parol testimony will be received for the purpose of identifying papers which, by a reference in the signed memorandum, are made parts of it. In *Warner* v. *Marshall et al.* (1906), 166 Ind. 88, 75 N. E. 582, it is said in connection with a course of correspondence that "where the reference is very general, and therefore indefinite, parol evidence may be introduced to show what instrument was referred to." In *Hodges* v. *Horsfall* (1829), 1 Russ & M. 116, 39 Eng. Reprint 45, parol evidence was held admissible, and sufficient if clear and satisfactory, to identify a building plan referred to in the writing, the court saying "as the written agreement refers specifically to a plan, if there be parol evidence, clear and satisfactory, to identify the particular plan, that evidence may be properly admitted for the purpose of so identifying it." See also note in 85 A. L. R. at page 1184. It therefore appears that while parol evidence is not generally admissible to show the *connection* between the signed and the unsigned, it is admissible to identify unsigned writings referred to in the signed writing. It is interesting to note that the mortgage loan already on the premises was approved

on the basis of the same plans and specifications and the appellant was required by the terms of the mortgage to complete the building in accordance with them. Of importance also, although not mentioned in the briefs or argument, is the fact that on the specifications the following appears: "Specifications for Lot # 61 Wheeler's Illinois Heights 5022 Graceland Ave. Richard G. Foltz architect," and the plans bear the notation "5022 Graceland."

It is contended by the appellant that the appellee cannot have specific performance because, to entitle him to that relief, the contract must be mutual in its obligations and in its remedy, and the case of *Garrick et al.* v. *Garrick et al.* (1909), 43 Ind. App. 585, 588, 87 N. E. 696, is cited to sustain that proposition. In that case this court said, without the citation of authority or reason, that "A contract of which specific performance will be enforced by a court of equity must be mutual in its obligations and in its remedy." and other reported cases in this jurisdiction contain similar statements. However, as early as 1845 in the case of *Shirley* v. *Shirley and Another* (1845), 7 Blackf. 452, 454, our Supreme Court said: "It has been seriously questioned whether the specific performance of a contract would be enforced, where both the parties were not bound to the performance of it by having signed the agreement, on the ground of a want of mutuality in the remedy. . . . The doubt however has been abandoned, and the Courts have, by numerous decisions, settled the doctrine that a contract signed by the party to be charged, according to the statute of frauds and perjuries, may be enforced by the other." In *Smith* v. *Smith and Another* (1846), 8 Blackf. 208, a case involving the sale of goods under the statute of

frauds, it is held that a contract which required signature by the party to be charged need be signed only by the party sued and it is no objection under the statute that the contract could not have been enforced against the plaintiff. In *Newby* v. *Rogers* (1872), 40 Ind. 9, the party to be charged is defined as the defendant to the action, and it is stated that the note or memorandum must be signed by him but need not be signed by the plaintiff. In *Burke et al.* v. *Mead et al.* (1902), 159 Ind. 252, 256, 64 N. E. 880, our Supreme Court, speaking through Gillett, J., said in a case involving the statute of frauds where only the owner of the property had signed the memorandum: "It was not necessary that the appellants should have signed the contract. The signatures of appellees to a sufficient note or memorandum would take it out of the statute of frauds as to them. . . . The requirement of mutuality in a contract does not mean that there must be a mutuality of remedy. . . . A proposition in writing to sell real estate upon certain terms that is signed by the owner, and is not a mere offer, but rests upon a distinct consideration, may become binding upon a seasonable acceptance. . . . It follows, therefore, that the contract that is here sought to be enforced does not stand condemned as lacking in mutuality." In *Knapp* v. *Beach* (1913), 52 Ind. App. 573, 575, 101 N. E. 37 it is said that: "The general rule is that the statute is satisfied and the plaintiff may enforce the contract if the writing is signed alone by the party sued, the defendant in the action, and is not signed by the plaintiff. . . . Especially is it true that a contract signed by one party only may become mutual and binding on both if the contract is accepted and acted on by the party not signing." In Restatement of the Law of Contracts § 372 (1) it is said that: "The fact that the remedy of specific enforcement is not avail-

able to one party is not a sufficient reason for refusing it to the other party." See also Comment on Subsection (1) and Illustration 5 following this section. It is held by the overwhelming weight of authority that a vendee who has contracted with the owner in relation to the sale of land may maintain a suit against the owner for specific performance if the owner has signed, though he himself has not signed, although of course he must have assented to and accepted, as a contract, the paper or instrument signed by the other party. See notes in 28 L. R. A. (N. S.) 680 and 43 L. R. A. (N. S.) 410. We have already held that the appellee in this case assented to and accepted this memorandum as a contract.

It is said that the proposition is too indefinite, uncertain and ambiguous to give the court jurisdiction to enforce specific performance thereof because of a clause therein which by insertions in the printed form was made to read as follows, the inserted material being italicized:

"That I am (we are) to be furnished free of charge ——— a complete abstract of title to date as quickly as the same can be prepared, said abstract to show a merchantable or insurable title to said real estate in the name of the grantors who will sign the deed conveying said real estate free and clear of all liens and encumbrances except as stated herein and restrictions of record, if any. This transaction is to be closed within *10 days of notification by owner to purchaser that house is completed* days after said abstract showing merchantable title or policy of title insurance is delivered."

To give a court of equity jurisdiction to enforce specific performance of a contract, it is necessary that the contract among other things be complete and certain, *Louisville, New Albany and Chicago Railway Company*

v. *The Bodenschatz, etc., Stone Company* (1895), 141 Ind. 251, 39 N. E. 703, clear and specific in all its essential elements, *Burke et al.* v. *Mead et al.* (1902), *supra*, for if the parties have made no certain and definite contract the courts will not make one for them, *The Gas Light and Coke Company of New Albany* v. *The City of New Albany et al.* (1894), 139 Ind. 660, 39 N. E. 462, and this court has held that more certainty is required in a contract where specific performance is invoked than is required where a recovery of damages is sought at law. *Harter* v. *Morris* (1920), 72 Ind. App. 189, 123 N. E. 23. The memorandum must embrace all the essential terms of the contract, for if an essential term of the contract is left to be shown by parol, it is a parol contract and therefore not enforceable under the statute. *Wertheimer et al.* v. *Klinger Mills, Inc.* (1940), 216 Ind. 481, 25 N. E. (2d) 246; *Lingeman* v. *Shirk, Executor* (1896), 15 Ind. App. 432, 43 N. E. 33. This insertion in the printed form does not seem to us to have introduced any element of uncertainty or confusion, for it seems apparent that it simply requires the appellant to furnish an abstract showing merchantable title or policy of title insurance, to notify the appellee of the completion of the house and to close the deal within ten days thereafter.

The evidence shows that frequent negotiations were had between the appellee and Foltz at and after the time of the exchange of papers and check whereby slight changes were made in the plans and specifications, thus introducing, according to the appellant, new terms not covered by the memorandum and the appellant contends that the contract is thereby rendered unenforceable. It also contends that the appellant had no authority to engage in construction work, but only a deliver a completed house. The court

awarded the appellant $78.09 in addition to the contract price of the house for these "extras." We do not agree that the contract was thus rendered unenforceable, nor do we feel that the various agreements concerning extras does violence to the provision of the original offer that "It is expressly agreed that all terms and conditions are included herein and no verbal agreements of any kind shall be binding or recognized." It is well settled that a contract stipulating that any modification must be in writing may nevertheless be modified verbally, 17 C. J. S., p. 867, § 377c, and it has been held in this State that when such additions or alterations are made, the original contract, unless it be so entirely abandoned that it is impossible to trace it and say to what part of the work it shall be applied, still exists, and binds the parties as far as it can be followed. The additions or alterations, if the expense of the work is thereby increased, may be the subjects of a new contract, either express or implied, but they do not affect the original contract, which still remains in force. *McKinney* v. *Springer* (1851), 3 Ind. 59. Moreover, the court did not undertake to enforce the performance of any modification of the original agreement nor of any new agreements concerning extras. The original contract being in force it decreed that the appellant deliver the property with house complete as the appellant had agreed to do. The fact that the appellant has been awarded $78.09 more than the contract price of the house imposes no new burden upon it and can hardly result in injury to it.

It is further asserted that the counter-offer required not only acceptance by the appellee but also the acceptance of a substitute mortgagor by the mortgagee, a third person not a party to this action; that therefore the contract would not be enforceable

against the appellee and is therefore not enforceable against the appellant. It is also claimed that there is neither allegation nor proof that such consent had been or could be procured. The complaint does allege and the proof does sustain the fact that a preliminary acceptance of appellee as substituted mortgagor had been obtained and that the same would ripen into final approval upon the execution by the appellant of its deed conveying the property to the appellee in accordance with its agreement so to do. The mortgagee was not required to sign the memorandum. Its acceptance of the appellee and his wife was one of the conditions upon which appellant agreed to convey and the appellee has complied with this condition in so far as that is possible in the circumstance of the appellant's refusal to convey. The decree provides for the execution of the necessary instrument to constitute appellee and his wife substitute mortgagors under the mortgage concurrently with the execution of its deed by the appellant. Thus the decree is conditioned as is the contract and the appellant is amply protected thereby. See Restatement of the Law of Contracts, §§ 373, 374.

The complaint is sufficient. The finding is sustained by sufficient evidence and is not contrary to law and the judgment is therefore affirmed.

NOTE.—Reported in 49 N. E. (2d) 358.