HAZEL G. HOLMES *v.*
RUSHVILLE PRODUCTION CREDIT ASSOCIATION.

[No. 1-376A31. Filed September 1, October 12, and December 7, 1976.]

*Robert Adams, Adams & Cramer,* of Shelbyville, *William H. Wolf, Wolf & Roback,* of Greenfield, for appellant.

*George J. Lewis, Ronald R. Pritzke, Lineback & Lewis,* of Greenfield for appellee.

### CASE SUMMARY

LOWDERMILK, J.—Defendant-appellant Hazel G. Holmes appeals from a judgment in favor of plaintiff-appellee Rushville Production Credit Association (PCA) which sued on notes co-signed by Holmes.[1]

We affirm.

---

1. The principal maker did not appeal the judgment against him.

## FACTS

On February 9, 1972, Jack M. Downs, Jr., made a note for $21,880 payable to PCA to cover a loan to him from PCA. The note was co-signed by his grandparents, Francis and Hazel G. Holmes. PCA also took a security interest in Downs' farm equipment to secure the note and future advances.

Downs later accepted an "additional advance" which involved a revised payment schedule. On May 18, 1972, he made a second note for $1,070 payable to PCA. Hazel G. Holmes also co-signed this note.[2]

The front of each note stated:

"In case of failure to perform any of the terms and conditions of this Note or of any Financing Statement and/or Security Agreement or any mortgage securing said indebtedness, or in case the holder hereof deems itself insecure, the entire balance of principal and interest shall at the option of the holder be immediately due and payable. The makers and endorsers severally waive demand, presentment for payment, protest, notice of protest, dishonor, notice of dishonor, notice of nonpayment of this Note and consent to any partial release of collateral and extensions of time. . . .

This Note is secured by a Financing Statement and Security Agreement (and a Real Estate Mortgage(s) dated ————————), and evidences the original indebtedness, a renewal indebtedness and/or an additional advance thereunder."

The first note called for a payment of $9,576 on February 9, 1973, whereas the revised payment schedule called for a payment of $9,790 on that date.

Both the first note and the revised schedule called for final payment in 1977.

On March 20, 1973, by which time no payments had been made, PCA sent Downs and Holmes a letter which stated, in pertinent part:

"Due to the following reasons, we will not be able to continue with your loan:

---

2. Francis Holmes died before the second note was executed.

1. Farm equipment financed by us . . . was traded for another tractor without our permission.
2. Other farm machinery was purchased without our knowledge.
3. Your debt to the Morristown Bank was not reported on your financial statement.
4. Your current obligations are too great for us to consider further financing.

We are requesting that your loan with us be paid in full by April 15, 1973. Any further funds from farm machinery or vehicles (other than the grain dryer) that are sold must be applied to our loan."

On April 10, 1973, Downs sold most of his equipment at a public auction which drew approximately 500 people to the Holmes residence where it was held.

A PCA representative attended the sale and released PCA's security interest in the collateral sold. He allowed Downs to retain possession of the proceeds—$20,255, subject to expenses of $508.73—with which Downs paid some bills as well as a $3,114 unsecured loan from The Union State Bank of Morristown.

Downs thereafter paid the remainder of the proceeds—$7,331.51—to PCA.

## ISSUES

1. Whether the revised payment schedule in the additional advance was enforceable against Holmes.

2. Whether Holmes, a surety, was discharged by the revision in the payment schedule.

3. Whether Holmes, a surety, was discharged by PCA's release of the collateral.

4. Whether PCA properly accelerated the notes.

5. Whether PCA violated the financial disclosure requirements of the Uniform Consumer Credit Code[3] and the federal

---

3. IC 1971, 24-4.5-1-101 through 24-4.5-6-203 (Burns Code Ed.).

Consumer Credit Protection Act[4] so that Holmes was entitled to relief under the civil liability provisions thereof.

## DECISION

ISSUE ONE:

Holmes contends that the revised payment schedule could not be enforced against her in that she did not sign it.

In Indiana, a surety's promise comes within the Statute of Frauds so that to be enforceable such a promise must be in writing and signed by the surety. IC 1971, 32-2-1-1 (Burns Code Ed.).

The Statute of Frauds may be satisfied by "several writings though one only is signed, if . . . the signed writing refers to the unsigned writing so as to make it part of the instrument which refers it." *Foltz* v. *Evans* (1943), 113 Ind. App. 596, 607, 49 N.E.2d 358. This Court explained the above rule in *Block* v. *Sherman* (1941), 109 Ind. App. 330, 335-336, 34 N.E.2d 951:

"In Pomeroy's Specific Performance of Contracts, 3d Ed. (1926), sec. 90, p. 217, the author states: 'The subject-matter of the agreement must all be included in the memorandum, and must be described with sufficient exactness to render its identity certain upon the introduction of extrinsic evidence simply disclosing the situation of the parties at, and immediately before, the time of making the contract. * * * The description of the subject-matter may be wholly or partially contained in an auxiliary writing, which, if referred to in such a manner as to establish the connection, becomes a constituent part of the memorandum; . . .'

"In Browne on the Statute of Fraud, 5th Ed., sec. 346b, on page 470, the author states: 'It is often the case that the terms of the contract are not all contained in any one paper. The question then arises, under what circumstances two or more papers can be offered in evidence as together constituting the memorandum, one only or all being signed, as the case may be. With regard to the first case, the rule is that the letter or other paper that is signed is to be regarded as incorporating and reciting any other writing referred to in it. It follows, then, that in the case of any signed paper, those writings referred to in it may be read, provided they

4. 15 U.S.C. §§ 1601-1681 (1968).

were in existence at the time when the paper referring to them was signed. It seems also that one signature may apply not only to the paper on which it is written, but also to another which at the time of signing was attached to it in such a way as to indicate that the whole was intended to be recognized by the signer as one paper.' "

Here, Holmes signed a note which expressly stated that it "evidenced" the "additional advance" which contained the revised payment schedule.

Inasmuch as the note sufficiently identified and referred to the additional advance, it and the payment schedule therein were incorporated into the note so that Holmes' signature on the note operated as a signature on the additional advance as well.

We therefore conclude that the trial court did not err in enforcing the revised payment schedule against Holmes.

ISSUE TWO:

Holmes next argues that she did not know of or consent to the revised payment schedule so that she was discharged.

We have stated and followed the rule that "when a principal alters the terms of the contract without the consent of the surety, the surety is discharged. . . ." *Indiana Telco Federal Credit Union* v. *Young* (1973), 156 Ind. App. 483, 297 N.E.2d 434, 436.

In raising this issue, Holmes attacks the trial court's Finding of Fact No. 10:

"The evidence is disputed as to disclosure of the repayment agreement to Defendant Holmes. Such disclosure is denied by Holmes, however it is undisputed that Holmes came to the office of Plaintiff to execute the second note and there is evidence of discussion of the circumstances of the second loan, including the new repayment schedule, with Holmes, and that Holmes was agreeable to whatever Downs had arranged. The Court finds that the new repayment schedule was disclosed to Holmes and consented to by her."

This court may not disturb this finding or the trial court's

judgment unless we find them to be clearly erroneous. Ind. Rules of Procedure, Trial Rule 52(A). We will find them to be clearly erroneous only if—although there is evidence to support them—a review of the entire record leaves us with a definite and firm conviction that a mistake has been made. *Citizens Gas and Coke Utility* v. *Wells* (1971), 150 Ind. App. 78, 275 N.E.2d 323. In our review we must accord due regard to the trial court's opportunity to judge the witness' credibility. TR. 52(A).

In view of the conflicting testimony on this issue, we cannot find that the trial court's Finding of Fact No. 10 and judgment were erroneous. Therefore, we may not disturb said finding or judgment.

ISSUE THREE:

Holmes raises another suretyship defense, which is codified in the Uniform Commercial Code at IC 1971, 26-1-3-606(1) (Burns Code Ed.):

"The holder discharges any party to the instrument to the extent that without such party's consent the holder . . .

(b) unjustifiably impairs any collateral for the instrument given by or on behalf of the party or any person against whom he has a right of recourse."

However, Holmes, by the terms of the notes, consented "to any partial release of the collateral. . . ."

Therefore the acts of PCA's representative at Downs' sale did not discharge Holmes.

ISSUE FOUR:

Holmes' next assertion is that PCA improperly accelerated the notes by demanding payment by April 15, 1973.

The notes expressly allowed PCA to accelerate them if the borrower failed to perform any of the terms and conditions of the notes or the security agreement, or if PCA deemed itself insecure.

Inasmuch as Downs had failed to make any payment by February 9, 1973, and had further breached the security agreement by failing in his loan application to disclose the loan from The Union State Bank of Morristown and by trading in a tractor covered by the security agreement without PCA's written consent, we conclude that PCA was entitled to accelerate the notes.

The omission of Down's delinqency in the letter demanding payment by April 15, 1973, is irrelevant in that the security agreement waived notice of acceleration.

The Uniform Commercial Code provides in IC 1971, 25-1-1-208 (Burns Code Ed.) :

"A term providing that one . . . party . . . may accelerate payment . . . 'when he deems himself insecure' or in words of similar import shall be construed to mean that he shall have power to do so only if he in good faith believes that the prospect of payment or performance is impaired. The burden of establishing lack of good faith is on the party against whom the power has been exercised."

In its Conclusions of Law, the trial court held:

"6. The demand letter of Plaintiff to the Defendant constituted notice of its election to deem itself insecure.

7. The stated grounds for such election together with the deficient payment which Plaintiff had received constitutes good faith in the matter of such election."

Inasmuch as Downs had incurred other financial obligations, had transferred collateral, and had acquired equipment in which PCA had no superior security interest, we conclude that PCA could honestly have believed that its chances of payment had been diminished and that Holmes did not establish a lack of good faith.

Therefore we cannot find that the trial court's decision on this issue was in error and cannot set aside that decision. Ind. Rules of Procedure, Appellate Rule 15 (N).

ISSUE FIVE:

Holmes lastly raises an alleged failure by PCA to comply with the disclosure requirements of the state and federal consumer protection statutes, *supra*.

The trial court's judgment for PCA denied Holmes relief under the civil liability provisions[5] of these laws. *Shriver* v. *Brown* (1877), 57 Ind. 267.

Both civil liability provisions allow relief for disclosure violations for only one year from the occurrence of the violations. IC 1971, 24-4.5-5-203(5) (Burns Code Ed.); 15 U.S.C. § 1640 (e) (1968).

PCA commenced this action on November 2, 1973. Holmes raised the disclosure issue on January 9, 1974. The discosure violation allegedly occurred prior to the execution of the first note on February 9, 1972.

Therefore we conclude that the trial court did not err in not granting Holmes relief under these statutes.

Judgment affirmed.

Robertson, C.J. and Lybrook, J., concur.

NOTE.—Reported at 353 N.E.2d 509.

PETITION FOR REHEARING
[Filed October 12, 1976]

LOWDERMILK, J.—In her petition for rehearing, the defendant-appellant Hazel G. Holmes reveals that we erred in our holding on Issue Five of our opinion. IC 1971, 24-4.5-5-205 (Burns Code Ed.) allows a borrower to at any time raise the civil liability of the lender for violations of disclosure requirements as a defense to an action on the borrower's obligation.

Inasmuch as the trial court's findings of fact did not touch on this issue, we are left with no clue as to why it rejected Holmes' claim under IC 1971, 24-4.5-5-203(1) (Burns Code

---

5. IC 1971, 24-4.5-5-203(1) (Burns Code Ed.); 15 U.S.C. § 1640(a) (1968).

Ed.). See *Miller* v. *Ortman* (1956), 235 Ind. 641, 136 N.E.2d 17.

We therefore temporarily withdraw our original opinion and hereby remand this cause to the trial court with instructions that it enter findings of fact on Issue Five and—in the event that its findings require a change in its judgment—to amend its judgment to conform to its findings.

It is further ordered that the trial court furnish this court with said findings and any other new record within forty (40) days of the date hereof.

NOTE.—Reported at 355 N.E.2d 417.

### SUPPLEMENTAL OPINION
[Filed December 7, 1976.]

LOWDERMILK, J.—Our original opinion in this cause[1] was temporarily withdrawn by our opinion on rehearing,[2] in which we remand this cause to the trial court for findings of fact on Issue Five. The trial court entered and filed with this court additional findings of fact and conclusions of law and an amended judgment.

The trial court found that PCA provided a proper disclosure statement prior to the execution of the first note—but not before the execution of the second note. According due regard to the trial court's opportunity to assess the witnesses' credibility, we uphold these findings. Ind. Rules of Procedure, Trial Rule 52(A).

The trial court found the finance charge on the second note to be $325.50 and concluded that Holmes and Downs were entitled to recover $651, twice the finance charge, from PCA pursuant to IC 1971, 24-4.5-5-203(1) (Burns Code Ed.). The trial court amended its judgment to decrease the amount thereof from $21,976.09 to $21,325.09.

We hereby reinstate our original opinion on the first four

---

1. At 353 N.E.2d 509.
2. At 355 N.E.2d 417.

issues and now affirm the trial court's amended judgment, and now deny Holmes' petition for rehearing.

Robertson, C.J. and Lybrook, J., concur.

NOTE.—Reported at 357 N.E.2d 734.